**In re AMATEX CORPORATION, formerly known as American Asbestos Textile Corporation, Debtor.**

**Bankruptcy No. 82–05220K.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 26, 1983.

Marvin Krasny, Philadelphia, Pa., for Creditors Committee.

J. Gregg Miller, Marc S. Cornblatt, Philadelphia, Pa., for debtor.

Pace Reich, Philadelphia, Pa., for Asbestos Litigants.

OPINION AND REPORT OF BANKRUPTCY JUDGE SUR ORDER OF REFERENCE DATED FEBRUARY 10, 1983

WILLIAM A. KING, Jr., Bankruptcy Judge.

Pursuant to the Order of February 10, 1983, the undersigned Bankruptcy Judge was directed by the Honorable James T.

Giles, District Judge, to file a report on the issue of whether the District Court should enter an order appointing a guardian *ad litem* to represent prospective asbestos claimants. My recommendation is that the debtor's Application to Appoint such a guardian be denied and, in support thereof, the following Report and Recommendations are hereby submitted.

## A. PROCEDURAL HISTORY

1. On November 1, 1982, Amatex Corporation filed a petition for relief under Chapter 11 of Title 11 of the United States Code.

2. A committee of unsecured creditors (the "trade committee") was appointed by the Court.

3. An additional Creditors' Committee was formed and petitioned the Court for appointment as an official committee. This second committee is composed of parties holding claims against Amatex arising from the so-called "asbestos litigation". (The "plaintiff's committee").

4. The Debtor filed an application for the appointment of a guardian *ad litem* to protect the interest of future asbestos claimants.

5. The plaintiffs' committee objected to the appointment of a guardian and filed a motion to withdraw the reference to the Bankruptcy Court with the District Court for the Eastern District of Pennsylvania.

6. On February 10, 1983, the matter was referred to the undersigned Bankruptcy Judge to conduct any necessary hearings and to prepare a report containing findings of fact, recommendations to the Court, and a proposed order.

7. Hearings on this issue were held on February 22nd, March 3rd, March 9th and March 16, 1983.

8. In addition, the subject has been constantly raised by counsel at other hearings in their Chapter 11 proceeding.

9. A stipulation of facts was filed on March 16, 1983.

10. At the hearing on March 16, 1983, the plaintiff's committee sought to introduce the testimony of a witness who would testify that in asbestos related diseases, a cause of action would not arise until discovery of the disease.

11. Counsel for the Debtor strenuously objected to the introduction of such evidence on the basis that it was irrelevant.

12. This Court held the matter under advisement and requested the parties to file briefs on the issue of relevancy. The decision of the Court is set forth in Section D of this Opinion and Report.

## B. FINDINGS OF FACT

1. American Asbestos Textile Corporation was incorporated under the laws of Pennsylvania on October 23, 1950.

2. The name of the company was changed to Amatex Corporation on September 15, 1972.

3. Amatex manufactures and sells industrial textile products.

4. The following Amatex products contain asbestos: thread, tape, yarn, rope, tubing and cloth.

5. Industrial textiles containing asbestos are widely used in the industry.

6. In excess of 16,000 lawsuits have been filed against asbestos companies on a nationwide scale as of November 1, 1982.

7. Amatex was named as a defendant in 9,843 of these cases.

8. These suits seek damages from the asbestos companies on the basis that exposure to or ingestion of asbestos fibers caused asbestosis or other physical ailments in the plaintiffs.

9. Amatex has been named as a defendant in 287 complaints filed in 25 different jurisdictions since the filing of the petition.

10. The diseases associated with asbestos have a latency period, that is to say, a time period between exposure to the substance and the time when medically diagnosable symptoms of the asbestos-related diseases appear.

11. This latency period may be as short as 3 years or as long as 40 years.

12. No evidence of the nature and extent of the Debtor's assets has ever been introduced.

## C. THE ISSUE PRESENTED

1. The issue before the Court has never been clearly defined by the parties.

2. The Debtor asserts that a guardian should be appointed to represent the interests of claimants whose symptoms have not yet manifested themselves.

3. The Debtor asserts that these claims will undoubtedly arise for years to come.

4. The Debtor asserts that the claims of these unknown parties may be dealt with in the instant Chapter 11 reorganization.

5. The Debtor asserts that a guardian must be appointed to represent the interests of these future, unknown claimants before any determination of whether such claims may be affected under Title 11 is made.

6. The plaintiff's committee, on the other hand, asserts that the appointment of a guardian would serve no purpose if these future unknown claimants could not be affected by the plan of reorganization.

7. The plaintiff's committee argues that the threshold issue is whether these claims may be included under the plan. If so, the Court should then address the issue of the appointment of a guardian.

8. The Court is in agreement with the view set forth by the plaintiff's committee. The issue of whether future claims may be included under a plan of reorganization must be resolved prior to any determination of the issue of appointing a guardian *ad litem.*

## D. RELEVANCY OF THE TESTIMONY OF MARTIN GREITZER, ESQUIRE

1. At the hearing of March 16, 1983, the plaintiff's committee sought to introduce the testimony of Martin Greitzer, Esquire.

2. As an offer of proof, the plaintiff's committee asserted that Mr. Greitzer would testify concerning his experience and research in the field of asbestos litigation. The crux of his testimony would be that in no jurisdiction of the United States does a cause of action arise from an asbestos-related ailment until the symptoms have manifested themselves.

3. The Debtor strongly objected to the introduction of any testimony on this issue on the grounds that it was irrelevant.

4. All parties filed extensive and well-written briefs.

5. At a hearing held on May 3, 1983, the Debtor stipulated to the substance of Mr. Greitzer's testimony. By no means, however, did the Debtor withdraw the objection as to relevancy.

6. In view of the issue presented by this unique and complicated matter, this Court finds Mr. Greitzer's testimony to be most relevant.

7. The stipulated testimony of Mr. Greitzer, as set forth in paragraph 2, *supra,* will be admitted into evidence over the objection of the Debtor.

## E. DISCUSSION OF RELEVANT PROVISIONS OF TITLE 11 OF THE UNITED STATES CODE

1. The threshold issue before the Court is whether future asbestos claims may be affected by a plan of reorganization. An examination of relevant provisions of Chapter 11 is necessary.

2. The Bankruptcy Code contains several provisions which regulate the contents and confirmation of Chapter 11 plans.

3. Section 1123 dictates, at some length, what must be provided in a plan:

§ 1123.  Contents of Plan.

(a) *A plan shall—*

(1) designate, subject to section 1122 of this title, *classes of claims* other than claims of a kind specified in section 507(a)(1), 507(a)(2), or 507(a)(6) of this title and *classes of interests;*

(2) *specify any class of claims or interests* that is not impaired under the plan;

(3) *shall specify the treatment of any class of claims or interests* that is impaired under the plan;

(4) provide the same treatment for each *claim or interest* of a particular class, unless the holder of a particular *claim or interest* agrees to a less favorable treatment of such particular *claim or interest;*

(5) provide adequate means for the plan's execution, such as—

. . . . .

(6) provide for the inclusion in the charter of the debtor, if the debtor is a corporation, or of any corporation referred to in paragraph (5)(B) or (5)(C) of this subsection, of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends; and

(7) contain only provisions that are consistent with the interests of *creditors and equity security holders* and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee.

(b) Subject to subsection (a) of this section, a plan may—

(1) impair or leave unimpaired any class of *claims, secured or unsecured, or of interests;*

(2) subject to section 365 of this title, provide for the assumption or rejection of any executory contract or unexpired lease of the debtor not previously rejected under section 365 of this title;

(3) provide for—

(A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or

(B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest;

(4) provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among *holders of claims or interests;* and

(5) include any other appropriate provision not inconsistent with the applicable provision of this title.

. . . .

11 U.S.C. § 1123. (emphasis and deletions by the undersigned). As can be seen from the emphasis added by the writer, this provision of the Code clearly envisions that a plan may affect only claims or interests.

4. Section 1129 sets forth, again at some length, the requisites for confirmation of a Chapter 11 plan:

§ 1129. Confirmation of plan.

(a) The court shall confirm a plan only if the following requirements are met:

(1) The plan complies with the applicable provisions of this chapter.

(2) The proponent of the plan complies with the applicable provisions of this chapter.

(3) The plan has been proposed in good faith and not by any means forbidden by law.

(4)(A) Any payment made or promised by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been disclosed to the court; and

(B)(i) any such payment made before confirmation of the plan is reasonable; or

(ii) if such payment is to be fixed after confirmation of the plan, such payment is subject to the approval of the court as reasonable.

(5)(A)(i) The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

(ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy;

(B) The proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

(6) Any regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

(7) With respect to each class—

(A) each *holder of a claim or interest* of such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of the title or such date; or

(B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such creditor's interest in the estate's interest in the property that secures such claims.

(8) With respect to each class—

(A) such class has accepted the plan; or

(B) such class is not impaired under the plan.

(9) Except to the extent that the holder of a particular *claim* has agreed to a different treatment of such claim, the plan provides that—

(A) with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(B) with respect to a *class of claims* of a kind specified in section 507(a)(3), 507(a)(4), or 507(a)(5) of this title, each holder of a claim of such class will receive—

(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

(C) with respect to a *claim* of a kind specified in section 507(a)(6) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

(10) At least one class of *claims* has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a). (Emphasis added). Again, we see the clear emphasis which the Code places on claims in bankruptcy cases.

5. The most significant provision, however, is section 1141 which addresses the effect of the confirmation of a plan:

§ 1141. Effect of confirmation.

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, *the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor or equity security holder of, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.*

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) After confirmation of a plan, the property dealt with by the plan is free and clear of all *claims and interests of creditors and of equity holders, and of general partners in the debtor,* except as otherwise provided in the plan or in the order confirming the plan.

(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) *discharges the debtor from any debt that arose before the date of such confirmation,* and any debt of a kind specified in section 502(g), 502(h) or 502(i) of this title, whether or not—

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

(2) The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title.

(3) The confirmation of a plan does not discharge a debtor if—

(A) the plan provides for liquidation of all or substantially all of the property of the estate;

(B) the debtor does not engage in business after consummation of the plan; and

(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

(4) The court may approve a written waiver of discharge executed by the debtor after the order for relief under this chapter.

11 U.S.C. § 1141 (Emphasis added). In this section, more than any other, we see that the Chapter 11 plan affects holders of claims or interests, creditors and parties with ownership interests.

6. The foregoing terms must now be defined. The Bankruptcy Code contains a definitional section which provides much guidance. Section 101 provides as follows:

(4) *"claim"* means—

(A) *right to payment,* whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

.    .    .    .    .

(9) *"creditor"* means—

(A) *entity that has a claim against the debtor that arose at the time of or before the order for relief* concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 502(f), 502(g), 502(h) or 502(i) of this title; or

(C) entity that has a community claim;

.  .  .  .  .

(11) *"debt" means liability on a claim;*
. . . .

11 U.S.C. § 101. (Emphasis added).

7. In the instant case, the order for relief concerning the debtor is deemed to be the date of the filing of the petition. 11 U.S.C. § 301.

8. Valuable information may be gleaned from an examination of the legislative history of the foregoing Code provisions. Concerning the definitions of the terms "creditor" and "debt", the legislative history provides as follows:

*"Creditor" is defined to include only holders of prepetition claims against the debtor.* However, it also encompasses certain holders of claims that are deemed to arise before the date of the filing of the petition, such as those injured by the rejection of an executory contract or unexpired lease, certain investment tax credit recapture claim holders, "involuntary gap" creditors, and certain holders of the right of setoff. The term also includes the holder of a prepetition community claim. A guarantor of or surety for a claim against the debtor will also be a creditor, because he will hold a contingent claim against the debtor that will become fixed when he pays the creditor whose claim he has guaranteed or insured.

.  .  .  .  .

"Debt" is defined in paragraph (11) as a liability on a claim. *The terms are coextensive: a creditor has a "claim" against the debtor; the debtor owes a "debt" to the creditor.*

[House Report No. 95–595, 95th Cong. 1st Sess. 309–310 (1977); *See* Senate Report No. 95–989, 95th Cong.2d Sess. 22–23 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5808–09, 6266–67.] (Emphasis added).

9. In view of these provisions, this Court can only conclude that a Chapter 11 plan may not affect future asbestos claims.

10. By defining the terms "creditor", "claim", and "debt" to be coextensive, Congress clearly intended that only prepetition claims could be affected by bankruptcy proceedings. (¶ 8, *supra*).

11. Every pertinent Chapter 11 provision speaks only of "claims" and "creditors" being affected by Chapter 11 plans. There is no question that the term "interests" used liberally in Chapter 11, refers solely to some form of ownership interest.

12. It is most important to note that § 1141(d)(1)(A) of the Code provides that a debtor is only discharged from debts which arose prior to confirmation of the plan. (¶ 5, *supra*).

13. In this regard, I find Mr. Greitzer's testimony extremely relevant. His stipulated testimony shows that no cause of action for asbestos related injuries arises until the symptoms have appeared.

14. Therefore, I must conclude that this group of unknown, future, asbestos claimants do not hold "claims" as defined by the Bankruptcy Code. 11 U.S.C. § 101(4).

15. I further conclude that the members of this group are not "creditors" as defined by the Bankruptcy Code. 11 U.S.C. § 101(9).

16. I further conclude that the debtor owes no "debt" to these unknown parties. 11 U.S.C. § 101(11).

17. I further conclude that the debtor's Chapter 11 plan, or any proposed in future proceedings in this case, would not discharge these future claims. 11 U.S.C. § 1141(d)(1)(A).

## F. RECOMMENDATION TO THE COURT

1. After thorough review of this case, and for the reasons discussed in section E, *supra,* I would recommend that the debtor's application to appoint a guardian *ad litem* be denied.

2. Although the debtor's analysis and reasoning concerning the equitable power of the Court to appoint such a representative may be well-taken, I would urge the Court

to consider the fact that the alleged claims that this person would represent are not cognizable under the Bankruptcy Code.

3. If this class of unknown, future claimants may not be affected by the plan of reorganization, no purpose would be served by appointing a guardian to protect their interest.

4. The debtor argues persuasively that a guardian is necessary to protect these interests on the basis that if the company fails to rehabilitate itself and is liquidated, these claims will have no recourse against any future fund. I cannot conceive how this guardian could improve the business climate to such an extent so as to guarantee that the company would continue to operate profitably and survive the current difficulties. Indeed, appointing a guardian would impose another administrative cost upon the debtor.