755 F.2d 1034
 53 USLW 2434, 12 Collier Bankr.Cas.2d 147,
12 Bankr.Ct.Dec. 1373, Bankr. L. Rep. P 70,279
 In re AMATEX CORPORATION, Formerly Known As American
Asbestos Textile Corporation.
Appeal of AMATEX CORPORATION, Debtor-in-Possession, in 83-1843.
In re AMATEX CORPORATION, Formerly Known As American
Asbestos Textile Corporation.
Appeal of Peter John ROBINSON, proposed intervenor, in 83-1868.
 Nos. 83-1843, 83-1868.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 1, 1984.
Decided Feb. 22, 1985.
Rehearing In Banc Denied April 2, 1985.
 
 J. Gregg Miller, Jan Z. Krasnowiecki (argued), Barbara H. Sagar, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Amatex Corporation appellant in 83-1843.
 Michael L. Goldberg, Philadelphia, Pa. (argued), George M. Rosenberg, Charles B. O'Reilly, Greene, O'Reilly, Agnew & Broillet, Los Angeles, Cal., for Peter John Robinson appellant in 83-1868.
 Pace Reich (argued), Pincus, Verlin, Hahn, Reich & Goldstein, Philadelphia, Pa., for Creditors' Committee of Asbestos Litigants appellee in 83-1843.
 Peter A. Dunn (argued), Nathan B. Feinstein, Philadelphia, Pa., for American Universal Insurance Company appellee in 83-1843.
 Mitchell S. Pinsly, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, Pa., for Interstate Fire & Casualty Company appellee in 83-1843.
 Before SEITZ and ADAMS, Circuit Judges, and LACEY, District Judge*
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 Asbestos related cases have reached almost epidemic proportions in our nation's legal system. In this appeal, we must decide, after first determining that we have jurisdiction, whether future asbestos claimants--individuals who have been exposed to asbestos but have not yet manifested symptoms of asbestos-related diseases--are entitled to have a voice in the reorganization of an asbestos manufacturer that has filed for protection under the bankruptcy laws. Because we believe it is important that such individuals have a representative to protect their interests in any discharge of Amatex' debts, we will reverse the decision of the district court and direct that the motion for the appointment of a representative for future claimants be granted.
 
 I.
 
 2
 Amatex, formerly American Asbestos Textile Corp., is a company engaged in the manufacture and sale of fire resistant industrial textiles, many of which contain asbestos. On November 1, 1982, the company filed a voluntary petition for relief under chapter 11 of the Bankruptcy Reform Act of 1978 (1978 Act), 11 U.S.C. Secs. 1101 et seq. (1982). As of that date more than 16,000 suits claiming damage from exposure to asbestos had been filed nationwide against asbestos miners, manufacturers, and installers. Amatex is named as a co-defendant in 9,843 of these cases in which the plaintiffs are seeking in the aggregate well over a billion dollars in damages. Amatex' total liability insurance is approximately 9 million dollars.[1] The potential liability of Amatex from the lawsuits and the associated defense costs formed the basis of the company's "insolvency" for purposes of its chapter 11 petition.
 
 
 3
 On December 15, 1982, the bankruptcy court ordered the appointment of a Creditors' Committee of Asbestos Litigants (Creditors' Committee) to represent plaintiffs having asbestos related claims currently pending against Amatex. The order made no provision for potential future claimants. Accordingly, on December 23, 1982, Amatex filed an application in bankruptcy court requesting the appointment of a guardian ad litem to represent future asbestos claimants on all issues before the court, including the question whether such latent claims could be provided for in the debtor's plan of reorganization.
 
 
 4
 The Creditors' Committee, on January 12, 1983, filed an objection to Amatex' request in the bankruptcy court. On the same date, based on the Supreme Court's decision in Northern Pipeline Construction Co. v. Marathon Pipeline Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Creditors' Committee also filed a motion in the district court to withdraw the reference of the guardian ad litem matter and to have the petition assigned to the district court. Thereafter, Judge Giles of the District Court for the Eastern District of Pennsylvania assumed jurisdiction over the application to appoint a guardian ad litem, and re-referred the matter to the bankruptcy judge for findings, recommendations, and a proposed order. At the same time Peter John Robinson, who professes to be a future claimant, sought to intervene in the proceedings to oppose the appointment of a legal representative to protect individuals similarly situated to himself.
 
 
 5
 In March of 1983, Amatex filed with the bankruptcy court a tentative plan of reorganization that included participation by future claimants. The Creditors' Committee opposed the plan and requested in the alternative the liquidation of Amatex under chapter 7 of the Code, 11 U.S.C. Secs. 701 et seq. (1982). On May 26, 1983, the bankruptcy judge filed an opinion and report, holding (1) that future claimants have no right to participate in any distribution of the debtor's estate because they are not "creditors" and do not hold "claims" as defined by the Code, and (2) that therefore no need to appoint a representative for future claimants exists because their "claims" are not dischargeable. In re Amatex, 30 B.R. 309 (Bankr.E.D.Pa.1983). After argument, the district court, by memorandum opinion and order, adopted the proposed findings and conclusions of the bankruptcy court. 37 B.R. 613 (E.D.Pa.1983). The district judge also denied Robinson's motion to intervene. Amatex and Robinson have appealed these rulings to this Court.
 
 
 6
 On July 25, 1984, after the passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (1984 Act), Pub.L. 98-353, 98 Stat. 333 (1984), which sought to revest bankruptcy courts with power to adjudicate "core" bankruptcy matters, Chief Judge Luongo of the District Court for the Eastern District of Pennsylvania entered an order referring all bankruptcy cases back to the bankruptcy court. As a result, Bankruptcy Judge King currently has jurisdiction over Amatex' chapter 11 proceedings, except for this appeal.
 
 II.
 A.
 
 7
 We must first address the question of our appellate jurisdiction. Because of the enactment of the 1984 Act, appellate jurisdiction in this case must derive from 28 U.S.C. Sec. 1291 (1982). The Bankruptcy Reform Act of 1978 contained a separate provision for appellate review in bankruptcy cases. Section 1293(b) of the 1978 Act declared that
 
 
 8
 a court of appeals shall have jurisdiction of an appeal from a final judgment, order, or decree of an appellate panel created under section 160 or a District court of the United States or from a final judgment, order, or decree of a bankruptcy court of the United States if the parties to such appeal agree to a direct appeal to the court of appeals.
 
 
 9
 28 U.S.C. Sec. 1293(b) (omitted by Pub.L. 98-353, title I, Sec. 113, 98 Stat. 343 (1984)).
 
 
 10
 The 1984 Act, which became effective on July 10, 1984, appears to have deleted Sec. 1293 and substituted a new provision governing appellate review which is codified at 28 U.S.C. Sec. 158 (1984).[2] Accordingly, it is necessary to ascertain whether the procedures set forth in the 1978 Act or the 1984 Act govern this appeal. In this regard, section 122(a) of the 1984 Act makes clear that portions of the 1984 Act regarding appellate jurisdiction became effective on July 10, 1984, the day of enactment.[3] Thus all cases and appeals filed after the effective date are to be governed by the procedural provisions of the 1984 Act.
 
 
 11
 It is essential to determine, however, whether title I of the 1984 Act also applies to matters pending before the effective date of the Act but not decided until after that date--the situation presented by this appeal. In this respect, section 122(b) of the 1984 Act specifically provides that certain designated sections of title I of the new Act "shall not apply with respect to cases under title 11 ... that are pending" on July 10, 1984. Since none of these statutory exceptions are applicable here, we conclude that the 1984 Act controls the present appeal. This result follows the general rule that "a court is to apply the law in effect at the time it renders its decisions, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Bradley v. School Board of Richmond, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); see In re Osborne, 42 B.R. 988, 992-93 (W.D.Wis.1984) (concluding that title I of 1984 Act applies to pending cases); see also In re Riggsby, 745 F.2d 1153 (7th Cir.1984) (apparently applying 1984 Act to a pending appeal).
 
 
 12
 Under the 1984 Act, the new provision governing appellate procedure is 28 U.S.C. Sec. 158 which provides that
 
 
 13
 (a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.
 
 
 14
 (b)(1) The judicial council of a circuit may establish a bankruptcy appellate panel, comprised of bankruptcy judges from districts within the circuit, to hear and determine, upon the consent of all the parties, appeals under subsection (a) of this section.
 
 
 15
 (2) No appeal may be referred to a panel under this subsection unless the district judges for the district, by majority vote, authorize such referral of appeals originating within the district.
 
 
 16
 (3) A panel established under this section shall consist of three bankruptcy judges, provided a bankruptcy judge may not hear an appeal originating within a district for which the judge is appointed or designated under section 152 of this title.(c) An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.
 
 
 17
 (d) The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.
 
 
 18
 28 U.S.C. Sec. 158, as enacted by Pub.L. 98-353, 98 Stat. 341 (1984).
 
 
 19
 Accordingly, courts of appeals have jurisdiction under Sec. 158(d) only of appeals from decisions entered under Secs. 158(a) and (b). Section 158(b) is inapplicable to the present appeal inasmuch as no bankruptcy appellate panel has been established by this Court. In addition, the appealed order does not fall under Sec. 158(a) because of the jurisdictional hiatus occasioned by the Supreme Court's decision in Northern Pipeline Construction Co. v. Marathon Pipeline Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which invalidated the jurisdictional grant of authority to non-Article III bankruptcy judges over matters "related to" bankruptcy in 28 U.S.C. Sec. 1471(c). Even though the jurisdictional grant to bankruptcy courts in Sec. 1471(c) was nullified by Marathon, this Court has held that the grant of original jurisdiction to district courts contained in 28 U.S.C. Sec. 1471(a) over title 11 and related proceedings survives intact. See Gold v. Johns-Manville Sales Corp., 723 F.2d 1068, 1075 & n. 11 (3d Cir.1983); see also Hanna v. Philadelphia Asbestos Co., 743 F.2d 996, 999-1000 (3d Cir.1984); Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 200 (3d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983).
 
 
 20
 In response to Marathon, district courts asserted original jurisdiction over bankruptcy proceedings and then referred the matters back to the bankruptcy judges who acted in effect like magistrates--making recommendations and submitting proposed orders to the district courts. This procedure was formalized with the enactment on December 21, 1982, of a Rule of the Eastern District of Pennsylvania which provides, in part:
 
 
 21
 (c) Reference to Bankruptcy Judges
 
 
 22
 (1) All cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 are referred to the bankruptcy judges of this district.
 
 
 23
 (2) The reference to a bankruptcy judge may be withdrawn by the district court at any time on its own motion or on timely motion by a party .... If a reference is withdrawn, the district court may retain the entire matter, may refer part of the matter back to the bankruptcy judge, or may refer the entire matter back to the bankruptcy judge with instructions specifying the powers and functions that the bankruptcy judge may exercise.
 
 
 24
 In the proceeding at hand, the district court at the request of the Creditors' Committee withdrew the reference to the bankruptcy court of the application to appoint a guardian ad litem. The district court then re-referred the matter back to the bankruptcy court which proceeded to make findings of fact, a recommendation, and a proposed order. Acting as a court of original jurisdiction, the district court issued an order that adopted the bankruptcy court's recommendation.
 
 
 25
 Because the district court was acting as a court of original jurisdiction, and not an appellate court reviewing the decision of the bankruptcy court, Sec. 158(a) could not form the basis of the district court's jurisdiction over the matter at issue. Therefore, this Court's jurisdiction cannot stem from Sec. 158(d); rather, 28 U.S.C. Sec. 1291, the general grant of jurisdiction to courts of appeals, must provide the basis for appellate review.[4]B.
 
 
 26
 Section 1291 grants jurisdiction to the courts of appeals over appeals "from all final decisions of the district courts." 28 U.S.C. Sec. 1291. Consequently, we must ascertain whether Judge Giles' order is final within the meaning of Sec. 1291. The Creditors' Committee asserts that the order is interlocutory and thus unreviewable at this time.
 
 
 27
 The concept of "finality" for purposes of appellate jurisdiction should be viewed functionally. See In re UNR Industries, Inc., 725 F.2d 1111, 1115 (7th Cir.1984). In this regard, we have consistently considered finality in a more pragmatic and less technical way in bankruptcy cases than in other situations. See, e.g., Pacor, Inc. v. Higgins, 743 F.2d 984, 987 (3d Cir.1984); In re Comer, 716 F.2d 168, 171 (3d Cir.1983); Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190 (3d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983); In re Marin Motor Oil, Inc., 689 F.2d 445 (3d Cir.1982), cert. denied, 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983); Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98 (3d Cir.1981). In Comer, this Court concluded that "[c]onsiderations unique to bankruptcy appeals have, in the past," led us to interpret finality more broadly in the bankruptcy context than in other areas. 716 F.2d at 171.
 
 
 28
 In In re Saco Local Development Corp., 711 F.2d 441, 443-48 (1st Cir.1983), Judge Breyer traced the concept of finality in bankruptcy proceedings, beginning with the Bankruptcy Act of 1867, Sec. 8, 14 Stat. 517, 520, reprinted in 10 Collier on Bankruptcy App. 1750 (J. Moore 14th ed. 1978). He observed that the "longstanding Congressional policy of appealability" in bankruptcy cases requires that "the 'finality' requirement applies differently in the bankruptcy context." Id. at 445, 447; see also In re Leimer, 724 F.2d 744, 745 (8th Cir.1984) (noting liberal policy of appealability in bankruptcy cases).
 
 
 29
 The rationale for viewing finality under a less rigorous standard in the bankruptcy area is clear. Bankruptcy cases frequently involve protracted proceedings with many parties participating. To avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory.
 
 
 30
 For example, in Marin Motor Oil, we used an expanded notion of finality to permit the Court to review a district court's grant of a motion to intervene. Although Marin Motor Oil was decided under Sec. 1293(b), a critical element in the decision to entertain jurisdiction there was the fact that the appeal involved bankruptcy. As we noted in Pacor v. Higgins, 743 F.2d at 987 n. 5, both Sec. 1291 and Sec. 1293 provide for review of "final orders" and there is no need to distinguish between the two in the bankruptcy context. Similarly, the Seventh Circuit has indicated that finality for purposes of Sec. 1291 and Sec. 1293 is "materially the same.... And while 'finality,' interpreted functionally, might mean something different in a bankruptcy case from what it does in other cases, section 1291 is flexible enough to be applied differently depending on the circumstances." UNR, 725 F.2d at 1115. Thus although our jurisdiction must be established under Sec. 1291, it is appropriate that our judgment in this regard be informed by notions of finality in bankruptcy appeals.
 
 
 31
 In Marin Motor Oil, a creditors' committee moved to intervene in adversary proceedings instituted by a bankruptcy trustee. The committee claimed it was a "party in interest" as defined by Sec. 1109(b) of the Code, 11 U.S.C. Sec. 1109(b) (1982), and therefore had an absolute right to intervene. Marin, 689 F.2d at 447. Nevertheless, the bankruptcy judge denied the request and the committee appealed to the district court. The district court reversed, holding that the committee had an absolute right to participate in the adversary proceedings.
 
 
 32
 On appeal, we noted the general rule in this Circuit that an order denying a request to intervene is considered final and appealable under Sec. 1291. Id. at 447; see also Commonwealth of Pennsylvania v. Rizzo, 530 F.2d 501, 504 (3d Cir.) (denial of request to intervene under Fed.R.Civ.P. 24(a)(2) is appealable), cert. denied, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976); Philadelphia Electric Co. v. Westinghouse Electric Corp., 308 F.2d 856, 859 (3d Cir.1962), cert. denied, 372 U.S. 936, 83 S.Ct. 883, 9 L.Ed.2d 767 (1963). In Marin, we went even further and held that in a bankruptcy proceeding, the district court's grant of a petition to intervene was also appealable. The Court reaffirmed its general reluctance to adopt an expansive interpretation of finality. Nevertheless, we held the grant of a right to intervene appealable, relying in part on the broader definition of finality in bankruptcy cases. Another ground for the holding in Marin was the fact that the court of appeals was in effect acting as a second layer of appellate review and that such an extra level of review was not unduly disruptive to the judicial process. Id. at 449.
 
 
 33
 The present case is similar to Marin Motor Oil in a number of respects. Here, Amatex has requested the appointment of a guardian ad litem to represent future claimants. In addition, Peter John Robinson has moved to intervene in order to oppose such an appointment. After hearing evidence and conducting full scale adversary proceedings, the bankruptcy judge concluded that future claimants did not have cognizable "claims" under the Code and therefore had no right to participate in the reorganization. Judge Giles accepted that recommendation and entered an order denying Amatex' petition. Robinson's request to intervene was also rejected. Both decisions have been appealed to this Court.
 
 
 34
 Under the functional approach, the denial of the appointment of a legal representative for future claimants should be recognized as being tantamount to a denial of such individuals' request to intervene.[5] Moreover, the denial of Robinson's request to intervene in the proceeding, albeit for the limited purpose of opposing Amatex' motion, is precisely the kind of order that this Court has held reviewable in the past. See, e.g., Marin Motor Oil, 689 F.2d at 445.
 
 
 35
 In addition, it is appropriate to consider the practical effect of the order that is at issue here. We do not have to make the ultimate and difficult determination whether future claimants have dischargeable "claims" in order to recognize that they have a right to be heard. To hold that we cannot now review a decision that such claimants are foreclosed from participating in the proceedings but must wait until a final plan is approved may well cause several years of hearings and negotiations to be wasted.[6]
 
 
 36
 Accordingly we hold that in the context of this case, the denial of the right to appoint a legal representative is final, and we thus have jurisdiction to hear the appeal. This holding may be perceived as somewhat at odds with a similar decision by the Seventh Circuit. See UNR, 725 F.2d at 1111. In UNR, the district judge refused to appoint a representative to file claims for future asbestos claimants. The Seventh Circuit held that the order was not final because it did not wind up the litigation and because it was not equivalent to the denial of a claim, which would be appealable. The court observed that the district judge "telegraphed his punch" and that it is "highly predictable" that if and when a future claimant files a claim, it will be denied. UNR, 725 F.2d at 1116. Nevertheless, because no potential claimant actually had filed a claim, the Seventh Circuit declined to hear the appeal.
 
 
 37
 UNR May be distinguished from the present proceeding in a number of ways: First, the Seventh Circuit focused on the fact that the district judge's order was not the same as a denial of a claim. Under our analysis, however, we must look to the functional effect of the court's decision in the bankruptcy context. As mentioned, the order denying representation to the class of future claimants is equivalent to a denial of a request to intervene, an order which is deemed final. The Seventh Circuit did not consider the implications of Sec. 1109(b), which concerns "parties in interest" rather than "creditors," on the question of finality. We agree with the Seventh Circuit that it is premature to determine whether future claimants currently have cognizable claims, but it nonetheless seems clear that future claimants require a voice in the reorganization proceedings. Bankruptcy Judge King recognized that future claimants might be adversely affected by the outcome of the reorganization plan.
 
 
 38
 Moreover, in the present proceeding a live future claimant, Robinson, has appealed the denial of his petition to intervene. Robinson had also attempted unsuccessfully to intervene in UNR but chose not to appeal, a fact specifically noted by the Seventh Circuit. UNR, 725 F.2d at 1117.[7] One final difference between this case and UNR should be noted. With the passage of the 1984 Act and Chief Judge Luongo's order of July 25, 1984, the bankruptcy court again has jurisdiction over the Amatex proceedings. Thus on remand, the case will be sent down two levels, a factor considered of some import in Marin, 689 F.2d at 448-49. When the Seventh Circuit decided UNR--before the passage of the 1984 Act--the district court was still exercising original jurisdiction over the proceedings. (The Seventh Circuit stated that but for the procedural lacunae caused by the Marathon decision, the order in UNR might well have been appealable. See 725 F.2d at 1121.)
 
 III.
 
 39
 Bankruptcy Judge King based his recommendation to deny Amatex' motion to appoint a legal representative for future claimants on a determination that such individuals as yet had no cognizable claims under the Code. Therefore, he believed, future claimants are not "creditors" and their claims may not be discharged, or even affected, in a reorganization plan. We need not reach the merits of these conclusions in order to ascertain that future claimants do have a sufficient interest to require some representation during the reorganization proceedings. Whether or not future claimants have claims in the technical bankruptcy sense that can be affected by a reorganization plan, such individuals clearly have a practical stake in the outcome of the proceedings. Indeed, Judge King observed that the interests of the future claimants could be adversely affected if Amatex failed to rehabilitate itself and was liquidated. 30 B.R. at 316.
 
 
 40
 Although the Seventh Circuit declined to review the district court's decision in UNR, it stated that it did not necessarily endorse the district judge's view. The Seventh Circuit wrote at considerable length regarding the advantages and disadvantages of treating future victims as creditors, and pointed out that the failure to provide for future claimants in a reorganization plan might fatally undermine any such plan as well as prejudice the position of future claimants. 725 F.2d at 1118-20. Comparable concerns in the Manville proceedings caused Judge Lifland to classify future claimants as parties in interest under Sec. 1109(b) of the Code and to appoint a legal representative to protect their interests.
 
 
 41
 Section 1109(b) of the Code, which makes clear that any "party in interest" may appear and be heard in a chapter 11 case, provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. Sec. 1109(b) (1982). The Code does not include a definition of party in interest; it is clear, however, that the term "party in interest" is not limited by the small list of examples in Sec. 1109(b). See 5 Collier on Bankruptcy p 1109.2, at 1109-22 (L. King 15th ed. 1984). Section 102(3) of the Code, 11 U.S.C. Sec. 102(3) (1982), part of the rules of construction of the Code, states that "including" is not a limiting term. And courts have not viewed the examples of parties in interest as being exhaustive. See, e.g., In re Cash Currency Exchange, Inc., 37 B.R. 617, 628 n. 10 (N.D.Ill.1984) (noting that Sec. 1109(b) must be construed liberally); In re Citizens Loan & Thrift Co., 7 B.R. 88, 89-91 (Bankr.N.D.Iowa 1980). Similarly, one commentator declared that "[s]ection 1109(b) must be construed broadly to permit parties affected by a chapter 11 proceeding to appear and be heard." 5 Collier on Bankruptcy p 1109(b), at 1109-22.1 to 1109-23; see also Citizens Loan & Thrift Co., 7 B.R. at 90. Consequently, courts must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation. See In re Penn-Dixie Industries, Inc., 9 B.R. 941, 943 n. 7 (Bankr.S.D.N.Y.1981).
 
 
 42
 Section 1109(b) continues the pattern of permitting interested parties in bankruptcy cases the absolute right to be heard and to insure their fair representation. See In re Johns-Manville Corp., 36 B.R. 743, 747 (Bankr.S.D.N.Y.1984). Section 206 of the Bankruptcy Act, 11 U.S.C. Sec. 606, and Chapter X Rule 10-210(a), the predecessor provisions of section 1109(b) of the Code, constituted an effort to encourage and promote greater participation in reorganization cases. In In re Keystone Realty Holding Co., 117 F.2d 1003, 1005 (3d Cir.1941), this Court stated that "[i]n substituting Chapter X for Section 77B [of the Bankruptcy Act of 1898, 11 U.S.C. Sec. 207], Congress clearly intended to broaden the rights ... to participate in corporate reorganization proceedings." See In re Duplan Corp., 450 F.Supp. 790, 791 (S.D.N.Y.1978). Section 1109(b) continues in this tradition and should be understood in the same way. See Citizens Loan & Thrift Co., 7 B.R. at 90.
 
 
 43
 Although the contours of section 1109(b) are not precisely delineated, we agree with Judge Lifland's conclusion that the provision is
 
 
 44
 certainly broad enough to embrace the interests of future claimants as affected parties. Future claimants are undeniably paties in interest to these reorganization proceedings pursuant to the broad, flexible definition of that term enunciated by the foregoing authorities. The drafting of "party in interest" as an elastic concept was designed for just this kind [of] situation.
 
 
 45
 36 B.R. at 748-49.
 
 
 46
 We conclude that future claimants are sufficiently affected by the reorganization proceedings to require some voice in them. Moreover, none of the parties currently involved in the reorganization proceedings have interests similar to those of future claimants, and therefore future claimants require their own spokesperson.
 
 
 47
 The Creditors' Committee, which is comprised of asbestos claimants whose injuries already have been manifested, has opposed the petition to appoint a representative for future claimants. Its position is that such claimants are not "creditors" under the Code and thus cannot participate in the reorganization. Of course, if future claimants are excluded from the reorganization plan, the current claimants will receive a larger portion of an obviously limited fund.
 
 
 48
 Amatex, the debtor, filed the petition to appoint a guardian ad litem. Its major concern is to receive a discharge in the reorganization proceeding from all possible claims--including those of future asbestos victims. Amatex takes the position that future claimants currently have cognizable claims, albeit unliquidated, unmatured and contingent claims. It is in the interest of Amatex that future claimants be deemed creditors in order that their claims might be discharged by the plan. Thus Amatex desires that recoveries by future claimants be limited to the terms of any reorganization plan regardless of whether such individuals might receive higher compensation through a different method of dealing with their claims.
 
 
 49
 Finally, there is Peter John Robinson who alleges that he is a future claimant. Robinson has attempted to intervene in order to oppose the appointment of a legal representative to participate in the reorganization to ensure that future claimants are treated fairly. Robinson does not appear to be an adequate representative of future claimants. He has entered an appearance in the three asbestos bankruptcy proceedings--Amatex, Manville, and UNR--to oppose the appointment of a legal representative for future claimants. See UNR, 725 F.2d at 1117; Manville, 36 B.R. at 747. There is some indication that his counsel was formerly aligned with the Creditors' Committee, which if true might create a conflict of interest and cast doubt on the genuineness of Robinson's concern for future claimants. Finally, it is significant that at oral argument before this Court, counsel for Robinson was unable to advise us who was paying counsel to intervene in these unrelated proceedings across the country.
 
 
 50
 Accordingly, because of the adverse interests of the other parties, it would appear that future claimants require their own representative.[8] Terming future claimants parties in interest will permit them to have a voice in proceedings that will vitally affect their interests. Moreover, by terming future claimants parties in interest we do not prejudge the difficult questions of whether and how to protect their interests most effectively. For example, one proposed plan filed by Manville in its own chapter 11 case does not attempt to discharge the debts of future claimants. 36 B.R. at 754. Much more information must be gathered before it can be determined how to provide most equitably for all concerned. At this juncture, considering the number of potential claimants and the amount of liability facing Amatex, we do not know whether future claimants can or should be considered "creditors" under the Code, whether constitutionally adequate notice can be provided to such a class, and how best to solve a whole host of other problems which have not been briefed.[9]
 
 
 51
 The bankruptcy court, with its factfinding capabilities, appears to be the proper forum to gather relevant evidence and resolve these difficult issues in the first instance. Thus we will reverse the order of the district court and remand with instructions for the district court to direct the bankruptcy court to appoint a legal representative for future claimants. In addition, the district court or bankruptcy court should reconsider Robinson's motion to intervene in light of the decision that future claimants must have a legal representative. If Robinson is permitted continued intervention in the proceedings, he may not do so as the representative of the entire class of future claimants.
 
 
 
 *
 Honorable Frederick B. Lacey, United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 The Creditors' Committee conservatively estimated that the actual awards against Amatex might amount to $20,000,000, well over the combined total of the debtor's assets and insurance coverage
 
 
 [2]
 28 U.S.C. Sec. 158 clearly is the new procedure regarding bankruptcy appeals. With respect to the fate of Sec. 1293, the 1984 Act contains two apparently contradictory provisions. Section 113 of the 1984 Act, Pub.L. 98-353, title I, 98 Stat. 343 provides that Sec. 1293 "shall not be effective." Section 121(a) of the 1984 Act, Pub.L. 98-353, title I, Sec. 121(a), 98 Stat. 345, however, appears mistakenly to have included Sec. 1293 among provisions of the 1978 Act to become effective on July 10, 1984
 
 
 [3]
 Section 122(a) of the 1984 Act states that "Except as otherwise provided in this section, this title [I] and the amendments made by this title shall take effect on the date of the enactment of this Act." Pub.L. 98-393, title I, Sec. 122(a), 98 Stat. 346 (codified in note preceding 28 U.S.C. Sec. 151). Title I of the 1984 Act contains the procedural provisions governing bankruptcy cases, including the promulgation of 28 U.S.C. Sec. 158 and the elimination of Sec. 1293
 
 
 [4]
 If the 1984 Act did not apply, our jurisdiction might still be based on Sec. 1291 and not Sec. 1293(b) of the 1978 Act because after Marathon the district court was asserting original jurisdiction. See Pacor, Inc. v. Higgins, 743 F.2d 984, 987 & n. 5 (3d Cir.1984); Coastal Steel v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 199-200 (3d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983). These cases specifically indicate that after Marathon in matters "related to" bankruptcy Sec. 1291, not Sec. 1293(b) applies. In this proceeding, which "arises under" rather than "relates to" title 11, it is possible that Sec. 1293(b) might still be operative. However, because we are applying the 1984 Act we need not resolve this thorny jurisdictional question. Moreover, applying Sec. 1293(b) rather than Sec. 1291 does not affect our jurisdiction. See Pacor, 743 F.2d at 987 n. 5
 
 
 [5]
 The equation of the denial to appoint a guardian ad litem, the matter here, with the denial of a right to intervene, the issue in Marin, is highlighted by the bankruptcy judge's reasoning for denying the motion. The bankruptcy judge refused to appoint a legal representative for future claimants because he concluded that such individuals were not creditors with cognizable claims under the Code. He reasoned that future claimants did not therefore have a sufficient stake to particpate in the proceedings
 
 
 [6]
 One motivation for the Seventh Circuit's refusal to hear a similar appeal was its recognition of the difficulty in rendering an ultimate decision on the rights of future claimants. See UNR, 725 F.2d at 1120. By deeming future claimants "parties in interest," see infra Part III, not only do we avoid making a premature decision, but we also ensure that there can be a more informed judgment in the future
 
 
 [7]
 By focusing only on the appealability of the denial of a claim and not the finality of the denial of a right to intervene, the Seventh Circuit discounted the importance of Robinson's presence in the case
 
 
 [8]
 We leave to the bankruptcy judge's discretion whether future claimants may have interests that call for the appointment of more than one representative
 
 
 [9]
 The complexity of dealing with mass torts through the bankruptcy courts has become a topic of much attention by commentators. See, e.g., Rowe, Bankruptcy and Mass Tort, 84 Colum.L.Rev. 846 (1984); Comment, The Case of the Disappearing Defendant, 132 U.Pa.L.Rev. 145 (1983); Note, The Manville Bankruptcy: Treating Mass Tort Claims in Chapter 11 Proceedings, 96 Harv.L.Rev. 11121 (1983). The fact that the topic has provoked such extensive debate highlights the difficulty of the issues involved and the undesirability of rendering a decision without a full development of the issues. We note that the propriety of using the bankruptcy laws as a means to avoid mass tort liability is not before us and we express no opinion on this important issue