In re DENNIS PONTE, INC., dba Ponte Trucking Co., Debtor.

BRUTOCO ENGINEERING & CONSTRUCTION CO., INC., Appellant,

v.

DENNIS PONTE, INC., dba Ponte Trucking Co., Appellee.

BAP No. EC–85–1158–VAsE.

Bankruptcy No. 284–00067–W–11.

United States Bankruptcy Appellate Panels, of the Ninth Circuit.

Argued and Submitted Jan. 23, 1986.

Decided May 23, 1986.

Paul M. Mahoney, Jones, Mahoney & Brayton, Pomona, Cal., Mark Gorton, Cooper & Shaffer, Sacramento, Cal., for appellant.

Blair Wyite, Arnold, Cal., for appellee.

Before VOLINN, ASHLAND and EL-LIOTT, Bankruptcy Judges.

VOLINN, Bankruptcy Judge:

Brutoco Engineering & Construction Co., Inc. ("Brutoco") is the holder of a disputed administrative expense claim of over $1 million. Brutoco appeals from the bankruptcy court's overruling of its objections to the plan and the order confirming the debtor's plan.

The issue before us is whether the bankruptcy judge erred in confirming the plan without holding an evidentiary hearing on feasibility and without taking into consideration the merits of Brutoco's administrative claim. We hold that an evidentiary hearing is required and reverse and remand.

## I. FACTS

### A.

The debtor-appellee, Dennis Ponte, Inc. ("Ponte"), is a trucking company. It also operates a rock crushing plant and provides

trucks for hauling crushed rock to various job sites.

Ponte filed a petition for reorganization under Chapter 11 on January 9, 1984. Ponte thereafter filed a complaint for turnover of estate assets against the appellant, Brutoco, in bankruptcy court. The complaint alleged that Brutoco owed Ponte some $308,000 for services rendered. Brutoco's answer denied it owed Ponte the foregoing sum, and alleged an offset of some $80,000, if it did.

Brutoco also filed a counterclaim against Ponte for Interpleader, Breach of Contract, Offset, Libel, Indemnity and Declaratory Relief. In its counterclaim for libel, Brutoco alleged that Ponte, after bankruptcy, had sent and published a letter to Brutoco's bonding company, which said:

> It appears to us that Brutoco is avoiding paying us either because they are financially insolvent or they are attempting to cause us irreparable harm for reasons unknown to us.

Brutoco alleged that its bonding company "interpreted the letter to mean Defendant [Brutoco] was insolvent and acting in bad faith," and that Brutoco had incurred additional expense and attorneys' fees to satisfy the bonding company that the defamatory publication was false. The counterclaim asked for general and special damages subject to proof at trial and for exemplary damages of $1 million.

As of the time of argument of this case, the counterclaim was still pending.[1]

### B.

The approved disclosure statement was filed on February 29, 1985. It declared that Ponte was forced into filing the Chapter 11 petition when Brutoco refused to pay for services rendered, and that since filing, "It has become evident ... that the accounts receivable owed by Brutoco were subject to substantial potential crossclaims." In its treatment of claims, Brutoco was classified under "Class K: Claims of Unsecured Creditors which are Unliquidated or Disputed," with the notation, "Amount of Claim Unknown."

In its first amended plan of reorganization, filed March 15, 1985, the debtor stated, "The unsecured creditors holding disputed, contingent or unliquidated claims will receive nothing." Such creditors were not classified.

Brutoco filed written objections to the proposed plan, contending, *inter alia*, that neither the disclosure statement nor the plan mentioned that its counterclaim, if successful, would be an administrative expense.

The confirmation hearing was held on April 10, 1985. Brutoco was the only interested party to argue against confirmation.[2] Brutoco argued that if it prevailed on its counterclaim, then "it could be a substantial administrative claim. And I think it's impossible to determine feasibility ... until we have some idea of what that claim is going to be." Brutoco's counsel requested an evidentiary hearing as to feasibility.

Ponte's counsel advised the court that Brutoco's counterclaim was disputed, and that:

> ... Brutoco really is not a creditor. They are just kind of hanging in there, pretending to be a creditor and making a lot of noise to try and defeat this claim and also take the heat off of Brutoco and divert the attention of the bankrupt from actually proceeding on that claim, which would realize $300,000 or so. I don't think that they have made any valid ob-

1. The court in which Brutoco's counterclaim is pending is unclear. On July 18, 1985, Ponte filed in the district court a complaint to withdraw reference of the adversary proceeding from the bankruptcy court. On August 12, 1985, Ponte filed in the bankruptcy court a motion to remove proceeding from trial calendar, which was apparently granted. The record on appeal does not indicate what has happened in district court since the filing of the complaint to withdraw reference.

2. Attorneys for the major secured creditors appeared and argued in favor of confirmation, subject to certain modifications, which were approved. Ponte's attorney reported that over 80 percent of the undisputed unsecured creditors had voted to accept the plan.

jections to accomplish their defeat of this plan.

The bankruptcy court observed, "Until you have something concrete, you're not an administrative claim. It hasn't happened yet." The court concluded, "I think we have to worry about administrative claims when we come to them."

The order confirming plan was entered on May 22, 1985. It made no reference to Brutoco's objection and found that the plan was feasible; *i.e.*, that "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under this plan." *See* 11 U.S.C. § 1129(a)(11).

Brutoco appeals from the order of confirmation and from an order denying its subsequent motion to alter or amend the order of confirmation.

## II.  DISCUSSION

### A.

◼ Both parties agree that Brutoco's status, by virtue of its counterclaim for an alleged post-petition tort, is essentially that of a potential administrative claimant. However, Ponte contends that Brutoco is not a "creditor" with a "claim" as defined by 11 U.S.C. § 502, and therefore its counterclaim need not be considered in the confirmation process. Ponte argues that if Brutoco is successful in litigating its counterclaim, then it should make a noticed motion under 11 U.S.C. § 503 for administrative expense status at that time.

It is well established that damages for a post-petition tort become an administrative expense under 11 U.S.C. § 503(b)(1)(A). The leading case establishing this doctrine is *Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), which held that a claim for negligence against a Chapter 11 receiver was an administrative claim. *See also SEC v. United Financial Group, Inc.*, 576 F.2d 217, 222–23 (9th Cir.1978); *In re Charlesbank Laundry, Inc.*, 755 F.2d 200, 202 (1st Cir.1985); *In re Chicago Pacif-*

*ic Corp.*, 773 F.2d 909, 913–14 (7th Cir.1985).

This doctrine covers a broad range of non-contractual claims which are not attended by benefit to the estate. For example, the *Charlesbank* case, *supra*, considered whether a civil compensatory fine for violation of an injunction by a Chapter 11 debtor qualified for first priority treatment as an administrative expense under 11 U.S.C. § 503(b)(1)(A) as "actual, necessary costs and expenses of preserving the estate." The fine was levied because the debtor committed a private and public nuisance violating a city zoning ordinance. The bankruptcy judge denied the city residents' motion that the penalty be an expense of administration, reasoning that there was "no benefit to the estate" or "contribution to the creditors." *Id.* at 201. The district court affirmed, distinguishing the *Reading* case because a civil penalty rather than tort was involved. On appeal, the First Circuit stated:

> Although there seems to be no authority precisely covering the circumstances of the instant case, we think it falls within the clearly enunciated rationale of *Reading Co. v. Brown.*

*Id.* at 202.

Ponte attempts to distinguish *Reading* by contending that the post-petition tort action would not become a "claim" and that Brutoco would not become a "creditor" even if its counterclaim were to culminate successfully in a judgment. In support of this contention, Ponte relies heavily upon *In re Amatex Corp*, 30 B.R. 309 (Bankr.E. D.Pa.1983), where the bankruptcy judge was directed by the district judge to file a report as to whether the district court should enter an order appointing a guardian ad litem to represent prospective asbestos claimants. The bankruptcy judge recommended that the debtor's application to appoint such a guardian be denied. The bankruptcy judge pointed out that 11 U.S.C. § 1123, dealing with the contents of plans, requires a plan to designate the classes of claims other than claims of a kind specified in Code Sections 507(a)(1),

507(a)(2) or 507(a)(6). The bankruptcy court also referred to other sections of Chapter 11 dealing with claims, such as Sections 1129, 1141, and 101, and concluded:

> this group of unknown, future asbestos claimants do not hold 'claims' as defined by the Bankruptcy Code. 11 U.S.C. § 101(4) ... I further conclude that the members of this group are not 'creditors' as defined by this Bankruptcy Code. 11 U.S.C. § 101(9) ... I further conclude that the debtor owes no 'debt' to these unknown parties. 11 U.S.C. § 101(11).

30 B.R. at 315.

The district court affirmed *Amatex* at 37 B.R. 613 (E.D.Pa.1983), but the Third Circuit reversed at 755 F.2d 1034 (3d Cir. 1985).[3] The Circuit Court of Appeals stated that it was not necessary to reach the merits as to whether the future claimants were "creditors" whose claims might or might not be discharged or affected in a reorganization plan. The Court stated that:

> Whether or not future claimants have claims in the technical bankruptcy sense that can be affected by a reorganization plan, such individuals clearly have a practical stake in the outcome of the proceedings.

755 F.2d at 1041.

The Court concluded that "future claimants are sufficiently affected by the reorganization proceedings to require some voice in them," *Id.* at 1042, and that although it did not know whether future claimants could or should be considered "creditors," nevertheless "[t]he bankruptcy court, with its fact-finding capabilities, appears to be the proper forum to gather relevant evidence and resolve these difficult issues in the first instance." *Id.* at 1044.

We are of the view Brutoco likewise has the kind of potential claim that warrants consideration as part of the confirmation process.

### B.

▮ Brutoco further contends that the bankruptcy court's finding of feasibility is clearly erroneous because it failed to estimate the value of the libel counterclaim pursuant to 11 U.S.C. § 502(c).

Ponte contends, however, that the bankruptcy court made the proper analysis of the feasibility of the reorganization plan pursuant to 11 U.S.C. § 1129(a). Ponte's argument is based on the premise that because Brutoco's claim "at best, is a contingent administrtive expense," Ponte's brief at 10, it may be disregarded.

Disregard of a potential post-bankruptcy administrative claim was the subject matter of a recent Ninth Circuit Court of Appeals decision, *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374 (9th Cir.1985).[4] The district court had vacated a confirmed Chapter 11 plan and remanded to the bankruptcy court so the creditor could amend its informal proof of claim and the court could estimate its value, which involved an action for damages arising from breach of contract and trademark infringement. Some of these alleged violations occurred post-bankruptcy. The Ninth Circuit affirmed, stating:

> The bankruptcy court confirmed Pizza's plan, finding that the plan was feasible. The district court, however, reasoned that '[w]ithout the benefit of an estimate of Shakey's claim, the bankruptcy court could not have adequately judged the plan's feasibility,' and remanded to the bankruptcy court 'to determine the plan's feasibility in light of the estimate.' We agree with the district court that the bankruptcy court's finding of feasibility was clearly erroneous because the plan failed to provide for the possibility that Shakey's would recover a large judgment in the civil case.

761 F.2d at 1382.

The *Pizza* district court, 40 B.R. 1014 (D.Haw.1984), cited *Bittner v. Borne*

---

3. Ponte's brief, which was filed 8 months after the Third Circuit's opinion, makes no mention of the reversal.

4. Ponte's brief did not discuss the *Pizza of Hawaii* case, despite citation and discussion thereof by Brutoco.

*Chem. Co., Inc.,* 691 F.2d 134 (3d Cir.1982), in support of its decision to remand for an estimation of the claim. *Bittner* held that the bankruptcy court did not err in assigning a zero value to claims of stockholders of a corporation which had brought a claim against the debtor in state court alleging tortious interference with a proposed merger. Citing Section 502(c), the court said:

> Despite the lack of express direction on the matter, we are persuaded that Congress intended the procedure to be undertaken initially by the bankruptcy judges, using whatever method is best suited through the particular contingencies at issue.

691 F.2d at 135.

It is clear that consideration of the value of Brutoco's pending counterclaim was excluded from the confirmation process. The nature and extent of the claim substantially affected the debtor's ability, under its plan, to make or meet a commitment to any class of creditors subordinate to the administrative class, which, pursuant to Section 507(a)(1), is granted a first priority. Confirmation of the plan, on the record before us, shows disregard of the need to evaluate and at least estimate the counterclaim.

We conclude, therefore, that the bankruptcy court should have considered the potential claim for Brutoco during the confirmation process sufficiently for the purpose of evaluating its impact on feasibility.

We reverse the order confirming the plan and remand for further proceedings consistent with the views herein expressed.