718 F.2d 1465
 9 Collier Bankr.Cas.2d 699, Bankr. L. Rep. P 69,435
In re Alexis M. YERMAKOV, dba, Westerly Stud Farms, Debtor.
Alexis M. YERMAKOV, dba, Westerly Stud Farms, Appellant,
v.
Edward R. FITZSIMMONS and Richard P. Weldon, Appellees.
 No. 82-5376.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 2, 1982.
Withdrawn from Submission
June 21, 1983.
Resubmitted Oct. 25, 1983.
Decided Oct. 25, 1983.
 
 Rauer L. Meyer, Bushkin, Kopelson, Gaims & Gaines, Los Angeles, Cal., for appellant.
 Merle C. Meyers, San Francisco, Cal., C. Douglas Wikle, Los Angeles, Cal., for appellees.
 Appeal from the United States Bankruptcy Appellate Panel of the Ninth Circuit.
 Before FLETCHER, NELSON and REINHARDT, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 This is an appeal from a decision of the Bankruptcy Appellate Panel that reversed the bankruptcy court's interpretation of the proper basis for computing the compensation to be awarded under 11 U.S.C. Sec. 330 to a debtor's attorney. The Panel ruled that Fitzsimmons, formerly attorney for the Yermakovs, who are debtors in a bankruptcy proceeding, could recover under section 330 the fee provided in a contingency fee contract entered with the Yermakovs three years prior to commencement of the bankruptcy proceeding. We withdrew the case from submission to allow additional briefing concerning the question whether we might lack jurisdiction over the appeal because the bankruptcy court's order was interlocutory.
 
 
 2
 The case is hereby resubmitted. We conclude that we have jurisdiction over the appeal and that the bankruptcy court, not the Panel, correctly interpreted section 330. Accordingly, we reverse.
 
 
 3
 * BACKGROUND
 
 
 4
 Alexis and Katherine Yermakov in 1974 purchased the Westerly Stud Farms, consisting of 3,700 acres of grassland in the Santa Ynez Valley near Solvang, California. $3,000,000 of the purchase price of $5,760,000 was paid by a promissory note secured by a deed of trust. The Yermakovs subsequently purchased several hundred thoroughbred race horses, also acquired by promissory notes secured by a second deed of trust on the Westerly real estate.[1]
 
 
 5
 The Yermakovs were unable to meet the payment schedule on the promissory notes given in the horse purchases, and they received a notice of default in November, 1977. Later they also defaulted on the promissory note given to purchase the real estate. The holder of the second deed of trust elected to foreclose, and the property was sold, subject to the first deed of trust, for $4,500,000. The purchasers agreed to allow the Yermakovs to remain in possession only through November 4, 1978. The Yermakovs found themselves in an unhappy situation, because they still owned about 150 horses that were stabled on the Westerly farm.
 
 
 6
 In September of 1978, the Yermakovs on advice of their attorney contacted the attorneys who are appellees in this case, Edward R. Fitzsimmons and Richard Weldon. By a letter dated September 26, 1978, the Yermakovs entered a contingency fee agreement with Fitzsimmons and Weldon. This agreement, after describing in detail the "extreme difficulty" of the Yermakovs' position, stated that "we [Fitzsimmons and Weldon] shall have, and are hereby granted, a thirty-five percent (35%) contingent fee of any enhancement in your present position, whether due from trial, settlement or sale." Fitzsimmons then commenced suit in California state court to set aside the foreclosure sale, alleging defects consisting of the failure to describe the entire parcel in the original trust deed and fraud by the mortgagee and the purchasers in the conduct of the sale. This court action effectively prevented the purchasers from ejecting the Yermakovs from Westerly Farms.
 
 
 7
 In September, 1979, while discovery was proceeding in the state court action, the purchasers bought the first deed of trust, which was also in default. This gave them power to foreclose and take possession of Westerly even though the state suit prevented them from taking possession based on the foreclosure of the second deed of trust. After the state court dissolved a temporary restraining order preventing foreclosure, Alexis Yermakov on February 4, 1980, filed a Chapter 11 petition in federal bankruptcy court.
 
 
 8
 Although neither the parties nor the court below stated the point explicitly, from the context of the record it appears that the value of both Westerly Stud Farms and the horses belonging to the Yermakovs appreciated substantially between 1975 and 1980. In the schedule of assets filed in the bankruptcy proceeding, Westerly was valued at $25,000,000 and the debtor's personal property, including the horses, was listed at $10,742,000. Thus, while the Yermakovs lacked sufficient cash to pay the indebtedness on their promissory notes, the total assets of the estate far exceeded total liabilities. The state action contesting foreclosure on the second deed of trust was removed to the bankruptcy court, where it was eventually settled prior to judgment. Under the settlement, a third party agreed to extinguish the Yermakovs' $11,500,000 outstanding indebtedness in exchange for an assignment of the right to redeem Westerly Stud Farms from the trust-deed purchasers. The Yermakovs also received free and clear title to the 210 acre parcel on which their residence and much of the farm improvements were located, an option to participate in a limited partnership that would own the entire Westerly Stud Farms, a dismissal of state counterclaims that had the effect of giving the Yermakovs 23 months of rent-free tenure on Westerly Stud Farms,[2] and $1,773,242 in cash left over from the foreclosure sale. Following the settlement, Yermakov moved to dismiss the bankruptcy proceeding.
 
 
 9
 After the Yermakovs and their creditors reached the settlement, Fitzsimmons on behalf of himself and his partner Weldon applied to the bankruptcy court for compensation pursuant to 11 U.S.C. Sec. 330(a)(1). Fitzsimmons contended that he and his partner are entitled to receive 35% of the "enhancement" in the Yermakovs' financial position over their position on September 26, 1978. The position presently adopted by Fitzsimmons is that he is entitled to receive, at a minimum, record title to 35% of the 210 acre parcel and $647,600 in cash.[3] The bankruptcy court, however, ruled that Fitzsimmons and Weldon may not enforce the contingency fee agreement in an application for a fee under section 330(a)(1), which authorizes only "reasonable compensation for actual, necessary services rendered" by a debtor's attorney. The court further found as a fact that the successful settlement primarily resulted from the efforts of the trustee in Yermakov's bankruptcy, as well as the trustee's attorney, and not from those of Fitzsimmons. The court stated that of the 1,877 hours of time billed by Fitzsimmons and Weldon, some were excessive and not required. Without stating any basis for computing an appropriate fee based on a reasonable hourly rate, the court awarded Fitzsimmons and Weldon total compensation, in addition to reimbursement for expenses, of $110,000.[4] The bankruptcy court did not and has not entered a final order terminating the bankruptcy proceeding. Instead, the case has been held in abeyance, apparently awaiting the disposition of the present appeal.
 
 
 10
 Fitzsimmons and Weldon appealed the bankruptcy court's fee award to a Bankruptcy Appellate Panel of the Ninth Circuit, which reversed. That court held that because the Yermakov bankruptcy will pay all creditors and return a surplus to the debtor, there is no need to apply any policy that would limit the debtor's attorney fee in order to conserve the estate for creditors. The Bankruptcy Panel further ruled that when judged by "the situation as it was when the agreement was entered into," the agreement is reasonable and can therefore be enforced upon a section 330 fee application.
 
 II
 JURISDICTION
 
 11
 We must determine at the outset whether we have jurisdiction to entertain the appeal from the Bankruptcy Appellate Panel's decision. In re Rubin, 693 F.2d 73, 76 (9th Cir.1982), held that while an interlocutory order of a bankruptcy court may, by leave of the panel, be appealed to the Bankruptcy Appellate Panel, the BAP decision remains interlocutory and cannot be the subject of a direct appeal to this court. In re Rubin does not question that a "final" order of the bankruptcy court may be appealed to the Bankruptcy Appellate Panel, and then to this court pursuant to 28 U.S.C. Sec. 1293(b). Id. at 75. Our jurisdiction in this case thus depends on whether the bankruptcy court order appealed is final or interlocutory.
 
 
 12
 The Tenth Circuit has ruled that an interim allowance of attorneys fees awarded pursuant to 11 U.S.C. Sec. 331 is interlocutory in nature and cannot be appealed directly to the circuit court. In re Callister, 673 F.2d 305, 307 (10th Cir.1982). We are inclined to agree with the reasoning of that decision. All parties to this case have argued, however, that the order awarding compensation to appellees was not an interim allowance, but rather a final determination of the payment to be distributed to them from the estate. The parties take the position that the bankruptcy court order is therefore final as to Fitzsimmons and Weldon, and may be appealed to this court.
 
 
 13
 Portions of the bankruptcy court's comments upon entering the order suggested that the award given might be supplemented by subsequent orders. The court stated that "[t]he allowances made now include work performed and time spent up to the time of the hearing on the applications. Any time spent and work performed after that will be the subject of separate applications." If the bankruptcy court meant that Fitzsimmons could apply for more compensation at a later time, the fee award could only be viewed as an interim order entered pursuant to section 331, and would not be appealable to this court. The parties, however, assure us that Fitzsimmons and Weldon were discharged from further representation of the Yermakovs prior to entry of the bankruptcy court's fee order. They maintain that the appellees will not be permitted to file any further fee applications.
 
 
 14
 Our review of the record satisfies us that the parties are correct, and that the bankruptcy court's comments quoted above did not leave open any possibility that Fitzsimmons and Weldon could be granted additional fee requests.[5] See In re Pacific Far East Line, Inc., 654 F.2d 664, 666 n. 2 (9th Cir.1981). Thus, the bankruptcy court order conclusively determined the entire section 330 compensation to be paid the appellees. From this premise it follows that the court's order, entered in the peculiar context of a bankruptcy proceeding, conclusively determined a separable dispute in the case, and constitutes a "final judgment, order, or decree" appealable under 28 U.S.C. Sec. 1293(b). See In re Saco Local Development Corp., 711 F.2d 441, 445-46 (1st Cir.1983).
 
 III
 SECTION 330 FEE AWARD
 
 15
 To recover under the contingency fee contract, the appellees filed for compensation under 11 U.S.C. Sec. 330(a)(1), which permits a fee award only for "reasonable compensation for actual, necessary services rendered by" an attorney.[6] The appellees ignore the purpose and effect of that provision. Section 330[7] is designed to secure for the estate the services of competent professional persons, including a trustee, an attorney for the trustee, accountants, appraisers, and others who may be needed in order best to operate, reorganize, or liquidate the estate. See S.Rep. No. 989, 95th Cong., 2d Sess. 40-41 (1978), reprinted in 1978 U.S. Code Cong. & Ad.News 5787, 5826-27; H.Rep. No. 595, 95th Cong., 2d Sess. 329-30 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6286-87. The debtor's attorney is included among the professionals compensated under section 330 on the theory that his services, while not performed for the direct benefit of the estate, may be helpful to the bankruptcy process because they facilitate orderly administration of the estate. 2 Collier on Bankruptcy p 330.04 (1983 ed.). Because "economy in administration is the basic objective," S.Rep. 989, 95th Cong., 2d Sess. 40 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5826, Section 330 limits the compensation payable to the debtor's attorney as well as other professionals to a reasonable amount for "actual" services that are "necessary" in connection with the bankruptcy process.
 
 
 16
 The contingent nature of the appellees' claim itself belies any contention that the amount appellees seek is reasonable compensation for actual or necessary services. Appellees in effect argue that no matter what the nature or extent of the services they performed, they are entitled to receive the share of the "enhancement" of the debtor's position that the Yermakovs agreed to in 1978. By accepting appellees' position, we would accord an administrative expense priority to an obligation incurred by the debtor long before the filing of bankruptcy. See 11 U.S.C. Secs. 503(b)(2), 507(a)(1) (Supp. V 1981). Such a result would flatly contradict the policy reason for granting administrative expense priorities, which is that the estate as a whole is benefitted if general creditors subordinate their pre-bankruptcy claims in order to secure goods and services necessary to an orderly and economical administration of the estate after the petition is filed. See In re Cochise College Park, 703 F.2d 1339, 1355-56 (9th Cir.1983). We cannot sanction the decision of the Bankruptcy Appellate Panel that would have produced this anomalous effect.
 
 
 17
 The panel below suggested that in the ordinary bankruptcy proceeding, the necessity for conserving assets for the benefit of creditors would require the bankruptcy court to ensure that a section 330 fee award is not excessive in light of actual services rendered. 21 B.R. at 11-12. However, it stated that the fact that the estate in this particular case will return a surplus of assets to the debtor required the section 330 application to be viewed from a different perspective. The panel ruled that because the fee agreement would apparently be upheld under state law, and since the issue of enforcement is before the court only due to a "fortuitous circumstance," there is no reason why the fee contract should not be enforced. Id.
 
 
 18
 We agree with the Bankruptcy Appellate Panel that nothing inherent in a contingency fee agreement between a debtor and his attorney prevents it from being enforceable in bankruptcy.[8] Because a pre-bankruptcy contractual obligation of a debtor to an attorney is like any other contract claim against the estate, the attorney can assert the claim in bankruptcy. See 11 U.S.C. Sec. 502(a) (Supp. V 1981). The claim must be disallowed, however, to the extent that it exceeds the reasonable value of services rendered by the attorney. 11 U.S.C. Sec. 502(b)(5) (Supp. V 1981).
 
 
 19
 In this case, it is questionable whether the claim asserted by the appellees represents the reasonable value of the services they rendered. From our review of the record, it appears likely that the Yermakovs' return to financial health was occasioned primarily by a sharp increase in the value of property they owned, and only tangentially by the efforts of Fitzsimmons and Weldon. As the bankruptcy court noted, an earlier filing for bankruptcy by Yermakov would probably have achieved a better result sooner at less cost. We do not decide whether a contingency fee contract can be or is in this case a measure of the "reasonable value" of the services of the debtor's attorney under section 502(b)(5). No aspect of either decision below addresses that issue; the issue is not before us. The record does not show that Fitzsimmons and Weldon ever filed a proof of claim covering the contingency fee contract. Unless properly proved, the claim may not be allowed. Perry v. Certificate Holders of Thrift Savings, 320 F.2d 584, 589 (9th Cir.1963). Should the appellees submit a proof of claim, the bankruptcy court in the first instance will determine whether and to what extent it can be allowed.
 
 IV
 CALCULATION OF THE FEE
 
 20
 The appellees argue in the alternative that even if the bankruptcy court correctly ruled that the contingency fee contract is not a proper basis for an award pursuant to section 330, still the court's award of $110,000 should be set aside because it is not reasonable. Appellees argue that the award is unreasonable because the bankruptcy court did not adequately articulate its reasons for arriving at the fee award.
 
 
 21
 The bankruptcy court, although it discussed the question of enforceability of the fee contract at length, made only a brief statement concerning the fee actually awarded. It commented that "[t]he time summary contained in the Supplement to Application for Fee as Attorneys for Debtor is of little help. The times are stated as approximations. Some are excessive or not required. The total is approximately 1,877 hours." Without further elaboration, the court awarded an overall fee of $110,000.
 
 
 22
 The primary method used to determine a reasonable attorney fee in a bankruptcy case is to multiply the number of hours expended by an hourly rate. Southwestern Media, Inc. v. Rau, 708 F.2d 419, 427 (9th Cir.1983). Under the present Bankruptcy Code, the hourly rate must be based on the rate that would be charged for comparable services in a non-bankruptcy case. 11 U.S.C. Sec. 330(a)(1); see H.R.Rep. No. 595, 95th Cong., 1st Sess. 330-31 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6286. Factors appropriate to the determination of a comparable rate in this case would include (1) the rate normally charged by Fitzsimmons and Weldon in comparable non-bankruptcy cases where an hourly fee basis is used; (2) the prevailing rate for such work in the area during the period in question; and (3) the number of hours of work claimed, if any, that were actually performed by persons whose services are generally billed at a lower rate. Southwestern Media, 708 F.2d at 428; see Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974) (listing numerous factors to be considered in awarding attorneys' fees).
 
 
 23
 We agree with the appellees that the fee award must be redetermined, because the record does not show that the bankruptcy court acted on the basis of the appropriate factors in determining the fee to be paid Fitzsimmons and Weldon. The court stated that some of the hours billed were excessive or unnecessary, but it did not state how many should be allowed. Nor did it state what it considered to be an appropriate hourly rate for the time spent. We therefore remand the case so that the court may recalculate the fee or state on the record the reasons supporting the present fee award.
 
 
 24
 We also remand for another reason. The bankruptcy court, in making its fee determination, may not have been aware that the appellees are not entitled to compensation under section 330 for all services they may have rendered the Yermakovs in the past. A proper construction of the bankruptcy fee statute allows compensation under the administrative expense provision of section 330 for only those "actual, necessary services" rendered by the debtor's attorney "in contemplation of and in connection with" the bankruptcy case. See 11 U.S.C. Secs. 329(a), 330(a)(1). Reasonable fees charged for services rendered for other purposes may also be compensated, but only as general claims against the estate, and not as compensation under section 330. The bankruptcy court should take further testimony, if necessary, and determine the number of hours spent by the appellees that can properly be compensated pursuant to section 330. It should then multiply those hours by an hourly rate calculated in accordance with the principles set forth in this opinion to arrive at the amount to be awarded Fitzsimmons and Weldon as "reasonable compensation for actual, necessary services rendered" by them as the debtor's attorneys in the bankruptcy proceeding.
 
 V
 CONCLUSION
 
 25
 The decision of the Bankruptcy Appellate Panel is REVERSED, and the case is REMANDED for further proceedings in the bankruptcy court.
 
 
 
 [1]
 However, the property description in this second deed of trust omitted a 210 acre parcel on which the debtor's residence, a breeding facility, and other improvements were located. 21 B.R. 6, 7 (Bkrtcy.App. 9th Cir.1982)
 
 
 [2]
 The Yermakovs received "free use" of Westerly between September, 1978 and February, 1980 because the claim of the purchaser at foreclosure for rent during that period was ultimately dropped. The Yermakovs received an additional period of free use, from July, 1980 to January, 1981, from the third party buyer as part of the settlement agreement. Based on the bankruptcy court's determination of a reasonable administrative rent, the value of the total period of free use was $1,250,000
 
 
 [3]
 This is based on only two items received by the Yermakovs in the settlement, the 210 acre land parcel and the $1,773,242 cash payment. Fitzsimmons states that if awarded this amount, he will forego any attempt to collect based on other types of "enhancement," such as free use of Westerly, the value of which is more speculative
 
 
 [4]
 This total consisted of $100,000 to be paid from the estate, plus $10,000 that Fitzsimmons and Weldon had received from the Yermakovs as an advance
 
 
 [5]
 We surmise that the comments referred only to the trustee, the attorney for the trustee, and the estate accountants, who were awarded fees at the same time as Fitzsimmons and Weldon
 
 
 [6]
 At argument before the bankruptcy court, counsel for appellees characterized his position as follows: "I believe that under the standards of section 330, and because section 329 is not applicable to the present situation [see infra note 8], the fees for the applicants in this case should be calculated solely upon the written contingency fee agreement between the parties."
 
 
 [7]
 11 U.S.C. Sec. 330 (Supp. V 1981) provides that:
 (a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney--
 (1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney ... based on the time, the nature, the extent, and the value of such services and the cost of comparable services other than in a case under this title ....
 
 
 [8]
 Section 329 of the Bankruptcy Code does, however, require the bankruptcy court to scrutinize any contract made between the debtor and his attorney within one year of the date of bankruptcy filing. If the compensation exceeds the reasonable value of services rendered or to be rendered by the attorney in contemplation of a connection with the bankruptcy case, the court may cancel the agreement. 11 U.S.C. Sec. 329 (Supp. V 1981). This provision is intended to protect against both attempts to withhold assets from the estate and the "serious potential for overreaching by the debtor's attorney." S.Rep. No. 989, 95th Cong., 2d Sess. 39, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5825
 Section 329 does not apply to the present case because the contract was entered more than one year prior to the bankruptcy filing.