**In re The CIRCLE K CORPORATION; Circle K Convenience Stores, Inc.; Circle K Management Company; Lar–Lin, Inc.; First Circle Properties, Inc.; Utotem, Inc.; Utotem Markets of Arizona, Inc.; U Totem of Alabama, Inc.; U–Tote'M of Colorado Inc.; U–Tote'M of Miami, Inc.; Tic Toc Systems, Inc.; Monterre Properties, Inc.; Shop & Go, Inc.; Circle K General, Inc.; Circle K Hawaii, Inc.; Combined Aviation Co.; Charter Marketing Company (Connecticut); Charter Marketing Company; Mr. B's Oil Co., Inc.; Mr. B's Food Mart, Inc.; NPI Corporation; Old Colony Petroleum Company, Inc.; New England Petroleum Distributors, Inc.; and 44th Street & Camelback Limited Partnership, Debtors.**

**Bankruptcy Nos. B–90–5052–PHX–GBN to B–90–5075–PHX–GBN.**

United States Bankruptcy Court,
D. Arizona.

March 5, 1992.

---

D.J. Baker, Weil, Gotshal & Manges, Houston, Tex., John J. Dawson, Streich Lang, Phoenix, Ariz., Tad R. Smith, Kemp, Smith, Duncan & Hammond, El Paso, Tex., for debtors.

Deborah M. Buell, Cleary, Gottlieb, Steen & Hamilton, New York City, for Official Unsecured Creditors' Committee.

Steven E. Sherman, Shearman & Sterling, San Francisco, Cal., for Citibank, N.A.

Martin F. Brecker, Anderson Kill Olick & Oshinsky, P.C., New York City, for Official Debentures Holders Committee.

William L. Novotny, Mariscal, Weeks, McIntyre & Friedlander, P.A., Phoenix, Ariz., for Senior Secured Noteholders.

Sam B. Cobb, Jr., Tyler, Tex., for Dan Matise.

William C. Kellough, Boone, Smith, Davis, Hurst & Dickman, Tulsa, Okl., for McCoy/Barbre applicants.

Frederic Dorwart, Tulsa, Okl., for Calco.

Adrianne Kalyna, Phoenix, Ariz., U.S. Trustee.

## ORDER

GEORGE B. NIELSEN, Jr., Bankruptcy Judge.

Since the petition filing, debtors rejected a number of leases of convenience store properties and have abandoned, with Court approval, certain estate property.

Applications for administrative expense priority were filed by landlords of three of the rejected leases. The properties will be referenced as the "McCoy/Barbre Property" located in Tulsa, Oklahoma; the "Matise Property" located in Tyler, Texas; and the "Calco Property" also located in Tulsa. Applicants seek administrative priority for costs to remediate environmental contamination associated with underground storage tanks. The expenses include removal of the tanks and cleanup of the surrounding soil.

I

Owners of the Matise Property have submitted a claim of $15,666.85 for removal of the underground storage tanks and contaminated soil. The Calco Property applicant submits expenses of $4,961.60 to comply with state and federal underground storage tank statutes. The McCoy/Barbre property submitted a claim of $6,700.00.

Before vacating the rejected leased premises, debtors allege the company ceased operating, emptied and capped underground storage tanks. Debtors' papers further state the company locked the fuel pipes and secured all other lines, manways and equipment, except vent lines, which must be kept open by federal regulations.

Debtors' objection to the administrative expense applications of the former landlords has been brought before the Court through a motion for summary judgment. In their papers, debtors argue that none of the landlords' claims are for costs involving actual, necessary expenses for preserving the debtors' estate. Therefore, the costs are not eligible for administrative expense priority. 11 U.S.C. § 503. The court in *In re Dant & Russell, Inc.*, 853 F.2d 700, 708–09 (9th Cir.1988), held a landlord's environmental cleanup costs caused by debtor's pre-petition conduct are not entitled to administrative priority.

Here, debtors argue the applicants' claims are identical to the claims asserted in *Dant & Russell*. All involve assertions of administrative priority by landlords of property leased before and during Chapter 11 for remediating environmental contamination. Additionally, costs of cleanup or tank removal are not costs preserving debtors' estate. This Court previously entered orders approving the debtors' rejection of leases. The Court has also authorized debtors to abandon items of inconsequential value located at these sites. Due to these orders, the debtors do not own, lease or operate either convenience stores on the sites in question or the tanks located at these facilities. Therefore any costs incurred in connection with the tanks are not costs of preserving the estate.

Debtors further argue that rejection of an executory contract or unexpired lease relates back to immediately before filing the bankruptcy. 11 U.S.C. § 365(g)(1). No lease effectively existed between the landlords and debtors after the petition date. Accordingly, prepetition leases never became property of the estate and any costs incurred to clean up contamination would not be actual, necessary costs of preserving estate property. The underground storage tanks are fixtures, debtors state, embedded in the soil and thus part of the leased property. Here the tanks can only be used while situated at the properties, due to federal regulation. Therefore, the tanks never became part of the debtors' estate. If, in the alternative, the debtors actually owned the tanks, the Court's prior order authorizing rejection of the leases extinguish any interests debtors had in the tanks. Any property rights passed to the landlords upon rejection. Even if the tanks are considered estate property, debtors argue they had the authority to divest the estate of these items by abandonment. The abandonment was requested since the tanks had no value to the estate. Abandonment transferred title and responsibility over the tanks to the landlords. Title to property abandoned by a debtor vests in any party holding a possessory interest in the abandoned property. Possession of land carries with it everything embedded in the soil. Therefore, the landlords became owners of the tanks following abandonment.

Furthermore, debtors argue, expenses incurred by the applicants did not preserve

any property rights of the debtors. The tanks were removed and scrapped. No property was preserved for the benefit of the estate. The benefit, if any, from removal of the tanks inured to the landlords, not to debtors. To qualify as actual and necessary administrative expenses, expenditures must benefit the estate, rather than the creditor.

The landlords contend that under 28 U.S.C. § 959(b), debtors had a duty to obey all federal and state environmental regulations. Therefore, costs of compliance are actual and necessary costs of preserving the estate. However, debtors argue this Court has already determined § 959(b) does not apply in circumstances involving rejected, leased properties with environmental contamination. *See* April 5, 1991 Order and Decision on Environmental Objections to Lease Rejection, docket item 3643. Thus, due to prior order, § 959(b) provides no basis for awarding landlords an administrative priority.

Regardless, debtors insist they did follow § 959(b). Before vacating the premises, debtors contend they closed all underground storage tanks in accordance with federal regulations. State regulations are essentially identical to federal temporary closure requirements. Therefore, the tanks were in current compliance with federal and state law when debtors vacated the premises.

The landlords also contend removal costs were necessary to prevent the debtors' prosecution for post-petition environmental violations. Debtors believe they were in full compliance with federal temporary closure regulations at the time they vacated the property. The tanks can lawfully remain in a temporary closure status for up to one year. Thereafter, the tanks could be put back in service, rather than removed.

Even if the tanks were not put back into service, any prosecution for failure to remove the tanks could not have been initiated for at least one year after debtors ceased operating the properties. The target of the prosecution could be either landlords or debtors. Under Texas law, all current and past owners and operators are jointly and severally liable for compliance with storage tank requirements. Property owners acted in their own interest when the tanks were removed.

Landlords have been awarded an administrative expense priority for costs of removing hazardous waste owned by a debtor from the landlord's property. *Matter of Kent Holland Die Casting & Plating*, 125 B.R. 493 (Bankr.W.D.Mich.1991). *Kent Holland* is distinguishable, debtors believe. Debtor in *Kent Holland* never rejected its lease, continued to operate the property post-petition and handled hazardous waste in a negligent manner. *Supra* at 496–98. By contrast, debtors here rejected their leases, ceased operations and secured the tanks in compliance with federal regulation. The debtor in *Kent Holland* was not permitted to abandon the contaminated drums. 125 B.R. at 501. Here, debtors point out, this Court already authorized debtors to abandon the premises. Additionally, claims of the landlords are subject to § 502(b)(6), which limits a lessor's claim for damages resulting from a rejected lease. Under this section, a landlord's claims for all damages, not just rent claims, resulting from a rejected lease are subject to a statutory cap.

The rights now asserted by the landlords arise from debtors' termination of the respective leases. The obligation to remove the tanks only became applicable when debtors rejected the leases and ceased operating the premises. As long as the tanks were in operation, the requirement to remove the tanks would not be triggered. Since claims for removal costs only arose upon debtors' termination of the leases, such claims are subject to the § 502(b)(6) statutory cap, it is argued.

Finally, granting an administrative expense priority would distort the system of priorities in the Code by allowing one set of creditors to be paid in full at the expense of others. Potentially many claims could be filed by similar landlords of rejected leases seeking administrative claims.

## II

The unsecured creditors' committee supports the debtors' motion, arguing the landlords are not entitled to recover as administrative expense costs associated with removal of the tanks or remediation of the landlords' own properties. To grant the applications, the committee believes, would fundamentally prejudice all unsecured creditors by creating a nonstatutory priority. The committee also argues that § 365(g) deems rejection of a lease as a prepetition breach. Therefore, consequential damages are treated as prepetition. Courts lack authority, it is argued, to create a priority for claims associated with cleanup costs if no statutory priority exists in §§ 503 and 507.

The committee asserts the landlords are indirectly requiring the debtors to cure defaults under rejected leases contrary to § 365(a). The landlords implicitly assert, upon rejection of the leases, the debtors breached their contractual obligations to remove the tanks and clean up and restore the sites. By seeking an administrative priority, the landlords are effectively requiring debtors to cure such defaults. Section 365(a), however, allows debtors to reject any unexpired leases without having to cure defaults. The committee, joined by the debenture holders' committee, finally argues that the fundamental bankruptcy policy of equitable distribution among creditors dictates that no one claimant should receive preference over another unless such preference is clear under the statute.

## III

The landlords argue that they have incurred expenses by complying with storage tank statutes on property leased by debtors. They believe such expenditures qualify as an administrative expense under § 503(b) of the Code. They suggest summary judgment should be denied due to a material issue of fact remaining unresolved: whether continued existence of the underground storage tanks created a danger to public health due to actual physical conditions at the site or by virtue of state or local laws. Applicants correctly suggest debtors made no effort to address the specific facts of each site. They further suggest an exception exists to the rule announced in *Dant & Russell*. Where public health, safety and welfare have been affected postpetition, administrative claims are appropriate. *In re Wall Tube & Metal Products Co.*, 831 F.2d 118 (6th Cir.1987). Here, debtors have not shown they were in compliance with state rules and regulations in maintenance of the underground storage tanks. *See* 28 U.S.C. § 959(b).

Debtors reply that no evidence is necessary concerning whether the tanks pose a potential hazard to the public. Such a showing would be irrelevant to the question whether the landlords are entitled to an administrative priority. *Dant & Russell*, it is argued, held landlords are not entitled to priority without regard to the severity of the environmental conditions.

## IV

■ Bankruptcy Rule 7056 incorporates Civil Rule 56, which permits summary judgment if the pleadings, discovery and admissions, together with affidavits, show there is no genuine issue of material fact and movant is entitled to judgment as a matter of law. A summary judgment movant bears the initial responsibility of providing the court with the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ Other than a citation to previous orders rejecting various leases, debtors did not comply with the *Celotex* mandate as well as Local District Rule 11(*l*)(1). Their papers fail to show: (1) when debtors vacated each of the leased premises, and (2) when debtors followed regulatory capping requirements.

■ Although this information may be contained in earlier pleadings, debtors fail to identify that portion of the record establishing these facts. Accordingly, the mo-

tion is denied without prejudice. Movants may subsequently supplement their position with the specific facts on which they rely in support of the motion. Such facts are to be set forth in serial fashion, not in narrative form. As to each fact, the statement shall refer to a specific portion of the record where the fact is found. *See* Local District Rule 11(*l*)(1), incorporated by Local Bankruptcy Rule 9033. Pursuant to the same Local District Rule, any parties resisting summary judgment must similarly set forth and document the specific facts they assert establish a genuine issue of material fact precluding summary judgment.

## V

Additional factual development is important because bankruptcy should not be used as a broad brush to wipe away all environmental claims. More information is needed on the specifics of these claims to allow the Court to issue a narrow ruling. *See, e.g., In re Dant & Russell, Inc.,* 951 F.2d 246, 248–50 (9th Cir.1991) (ruling, *inter alia,* on whether claimant was entitled to an administrative claim for environmental contamination.)

 A recent Panel case adopted the "conduct" theory defining when environmental claims arise. *In re Jensen,* 127 B.R. 27, 32–33 (9th Cir. BAP 1991). Under this theory, a claim arises upon actual or threatened release of hazardous waste by debtor. *Supra, Jensen* thus establishes that the timing of a claim, in and of itself, can determine whether the debt is an unsecured obligation or one entitled to administrative priority. A claimant is entitled only to administrative priority for expenses incurred post-petition. *See In re Christian Life Center,* 821 F.2d 1370, 1373–74 (9th Cir.1987); *Yermakov v. Fitzsimmons (In re Yermakov),* 718 F.2d 1465, 1470 (9th Cir.1983). If the conduct occurred post-petition, debtors might be liable for an administrative expense. However, if it arose prepetition, then, as part of a rejected lease claim, it would be a prepetition debt. 11 U.S.C. § 365(g).

Finally, further factual development is important because damages for a post-petition tort become an administrative expense under § 503(b)(1)(A), *In re Dennis Ponte, Inc.,* 61 B.R. 296, 298 (9th Cir. BAP 1986). If debtors were negligent in post-petition efforts to seal tanks, this may constitute an administrative claim.

ORDERED ACCORDINGLY.