**In the Matter of LOCKWOOD CORPORATION, Debtor.**

**James J. STUMPF, Trustee, Plaintiff,**

**v.**

**CREEL & ATWOOD, P.C. and Pegasus Financial Services, Inc., Defendant.**

Bankruptcy No. 93–80133.
Adversary No. 97–8032.

United States Bankruptcy Court,
D. Nebraska.

Dec. 2, 1997.

James Mitchell, for Trustee.

Kathryn Derr, for L.E. Creel, III.

*MEMORANDUM*

TIMOTHY J. MAHONEY, Chief Judge.

Hearing was held on October 16, 1997, on a motion to dismiss. This memorandum contains findings of fact and conclusions of law required by Fed.Bankr.R. 7052 and Fed. R.Civ.P. 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A).

**Background**

The debtor in the underlying bankruptcy case, Lockwood Corporation (BK93–81033), filed a voluntary petition for Chapter 11 bankruptcy on January 29, 1993. Simultaneously filed with the petition was an Application for Employment to allow the debtor to employ Creel & Atwood, P.C. (hereafter "Creel & Atwood"), a Texas professional corporation. Creel & Atwood received authorization to be employed as debtor's counsel on March 15, 1993. Creel & Atwood served in that capacity until their withdrawal was approved on November 4, 1993. After Creel & Atwood's withdrawal, the debtor was represented by Schmid, Mooney & Frederick, P.C., a Nebraska professional corporation.[1]

Creel & Atwood received compensation and reimbursement for expenses, from the debtor's estate, in the amount of $168,049.92. During the pendency of the Chapter 11 case, Creel & Atwood submitted affidavits to the Court, which certified "that the Firm is able to respond to any reassessment or disgorgement of these fees and expenses, as may be ordered by the Court." (Affidavit of Paul B. Geilich, shareholder of Creel & Atwood, filing no. 140). Creel & Atwood filed a "Final Application of Creel & Atwood, P.C. for Compensation and Reimbursement of Expenses" and the Court signed the submitted order allowing the fees to be paid.

The Chapter 11 case was converted to Chapter 7, on February 20, 1996. The Chapter 7 Trustee, alleging that the Lockwood Chapter 7 estate is administratively insolvent filed this present adversary proceeding against Creel & Atwood and Pegasus Finical Services, Inc. Creel & Atwood has filed this pending Motion to Dismiss and asserts numerous legal grounds for such dismissal. Those assertions will now be dealt with seriatim.

**Discussion**

**I. Standard for Granting a Motion to Dismiss**

A motion to dismiss filed after the pleadings have closed is, in essence, a motion for judgement on the pleadings. *St. Paul Ramsey County Medical Center v. Pennington County,* 857 F.2d 1185, 1187–88 (8th Cir. 1988), *citing* Fed.R.Civ.P. 12(c); *Falls Riverway Realty v. Niagara Falls,* 754 F.2d 49, 53 (2d Cir.1985). A court should not grant a Fed.R.Civ.P. 12(c) motion for judgement on the pleadings "unless the movant clearly establishes no material issue of fact remains to be resolved and he is entitled to judgement as a matter of law." *Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters and Butcher Workmen of North America,* 627 F.2d 853, 855 (8th Cir.1980), *citing* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1368 at p. 690. The court in deciding the 12(c) motion for judgement on the pleadings must "construe all

---

1. Schmid, Mooney & Frederick, P.C. and other counsel and accountants are defendants in a separate adversary proceeding. As in this adversary proceeding, the Chapter 7 Trustee seeks disgorgement of interim compensation paid to Chapter 11 professionals.

well pleaded factual allegations of the non-moving party as true, and draw in favor of that party all reasonable inferences from these facts." *Id., citing Quality Mercury, Inc. v. Ford Motor Co.,* 542 F.2d 466, 468 (8th Cir.1976), *cert. denied,* 433 U.S. 914, 97 S.Ct. 2986, 53 L.Ed.2d 1100 (1977).

## II. Subject Matter Jurisdiction

The complaint must sufficiently allege its jurisdictional basis, to establish subject matter jurisdiction. *Bowe v. Northwest Airlines, Inc.,* 974 F.2d 101, 103 (8th Cir.1992), citing *Lawrence v. Dunbar,* 919 F.2d 1525, 1528–29 (11th Cir.1990); *Haley v. Childers,* 314 F.2d 610, 613 (8th Cir.1963). When a court is deciding a "facial attack on a complaint's alleged jurisdictional basis, the [court] [considers] the complaint's factual allegations as true." *Bowe,* 974 F.2d at 103, *citing Lawrence,* 919 F.2d at 1529; *Haley,* 314 F.2d at 613. A court should grant dismissals for lack of subject matter jurisdiction sparingly and cautiously. *Bowe,* 974 F.2d at 103, *citing Huelsman v. Civic Ctr. Corp.,* 873 F.2d 1171, 1174 (8th Cir.1989).

Bankruptcy courts have only the jurisdiction and powers expressly or by implication granted by Congress. *Johnson v. First Nat'l Bank of Montevideo,* 719 F.2d 270, 273 (8th Cir.1983) (citations omitted), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). The Eighth Circuit recently explained the distinction between core and non-core proceedings vis-a-vis subject matter jurisdiction in *Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d 770 (8th Cir. 1995). The Eighth Circuit stated:

---

**2.** *See also In re United States Brass Corp.,* 110 F.3d 1261, 1268 (7th Cir.1997) ("Core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law."); *United States v. Yochum (In re Yochum),* 89 F.3d 661, 670 (9th cir.1996) (citations omitted) ("In determining whether a matter is a non-core proceeding, we look to a variety of factors 'such as whether the rights involved exist independent of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affect-

Civil proceedings in a bankruptcy case are divided into two categories, core proceedings and non-core, related proceedings. *Abramowitz v. Palmer,* 999 F.2d 1274, 1277 (8th Cir.1993) (Abramowitz). Core proceedings under 28 U.S.C. § 157 are those which arise only in bankruptcy or involve a right created by federal bankruptcy law. *Matter of Wood,* 825 F.2d 90, 97 (5th Cir.1987)(Wood); *see* 28 U.S.C. S 157(b)(2). Non-core, related proceedings are those which do not invoke a substantive right created by federal bankruptcy law and could exist outside of a bankruptcy, although they may be related to a bankruptcy. *Wood,* 825 F.2d at 97.

*Specialty Mills,* 51 F.3d at 773–774.[2]

The Chapter 7 Trustee's cause of action against Creel & Atwood is based upon the priority scheme of the Bankruptcy Code and the compensation received by Creel & Atwood from the Lockwood bankruptcy estate. The Chapter 7 Trustee's claim exists solely under Title 11 and it could not exist outside the bankruptcy courts. Therefore, the disgorgement action by the Chapter 7 Trustee is a core proceeding, as defined in 28 U.S.C. § 157(b)(2).

## III. Personal Jurisdiction

### A. In Personam Jurisdiction

Service of process is the physical means through which personal jurisdiction is obtained over a party. *Nordberg v. Granfinanciera, S.A. (In re Chase and Sanborn Corp.),* 835 F.2d 1341, 1345 (11th Cir.1988) *rev'd other grounds* 492 U.S. 33, 109 S.Ct.

---

ed by the filing of the bankruptcy case.' "); *Torkelsen v. Maggio (In re The Guild and Gallery Plus, Inc.),* 72 F.3d 1171, 1178 (3d Cir.1996) ("If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding."); *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 482 (6th Cir.1992) (citation omitted) ("A core proceeding either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy."); *Gardner v. United States (In re Gardner),* 913 F.2d 1515, 1518 (10th Cir.1990) (citation omitted) ("Core proceedings are proceedings which have no existence outside of bankruptcy").

2782, 106 L.Ed.2d 26 (1989). The Federal Rules of Bankruptcy Procedure provide for a system of nationwide service of process. Rule 7004(d) states "The summons and complaint and all other process except a subpoena may be served anywhere in the United States." Fed.R.Bankr.P. 7004(d). The nationwide service provided in Rule 7004(d) grants in personam jurisdiction over any party located in the United States, regardless of the entities contacts with forum state. *K O Trucking v. Ground Control, Inc. (In re K O Trucking, Inc.)*, 99 B.R. 78, 79–80 (N.D.Ala. 1988).

■ The purpose of Rule 7004(d) is to prevent the fragmentation of bankruptcy litigation and to avoid the limitations on service of process found in Fed.R.Civ.P. 4. *G.F. Track Service, Inc. v. Dakota, Minnesota & Eastern Railroad Corp. (In re G.F. Track Service, Inc.)*, Neb. Bankr. 89:62, 63 (Bankr. D.Neb.1989). In lieu of the standard due process requirements, minimum contacts analysis, the Bankruptcy Code and Rules permit the District Court to make a determination concerning abstention under 28 U.S.C. § 1334. *Id., citing 9 Collier on Bankruptcy* ¶ 7004.06 (15th ed.1988).

Therefore, since Creel & Atwood has been properly served with the complaint, this Court has personal jurisdiction over the movant.

**B. Minimum Contacts**

While many courts, including this one, have held that the minimum contacts analysis for a due process determination is irrelevant to a determination of personal jurisdiction upon a party properly served through Fed. R.Bankr.P. 7004(d) [3], Creel & Atwood asserts that a minimum contacts approach is Constitutionally required. Assuming, for purposes of this motion only, that minimum contacts analysis is applicable, Creel & Atwood's assertion that it has insufficient contacts with

Nebraska for jurisdictional purposes is wholly without merit.

■ Under the minimum contacts analysis, in order for this Court to obtain personal jurisdiction over the nonresident defendant, Creel & Atwood, the requirements of Nebraska's long arm statute must be met and the exercise of personal jurisdiction must meet constitutional requirements. *Wessels, Arnold & Henderson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995). The applicable long-arm statute is Neb.Rev.Stat. § 25–536 (Reissue 1995). Nebraska has construed this statute to confer jurisdiction to the extent allowed by the Constitution. *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 612 (8th Cir.), *cert. denied*, 513 U.S. 948, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994); *Aaron Ferer & Sons Co. v. American Compressed Steel Co.*, 564 F.2d 1206, 1209 (8th Cir.1977).

■ The due process clause requires a defendant to have such minimum contacts with the forum state so that the traditional notions of fair play and substantial justice are not offended. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). To establish sufficient minimum contacts, defendant must have, by some act, purposefully avail[ed] itself of conducting activities within the forum state, thus invoking the benefits and protection of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The defendant's contacts must have been more than random, fortuitous, or attenuated. *Id.* Rather, the contacts must be such that the defendant should reasonably anticipate being haled into court in the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

■ Personal jurisdiction is divided into two categories: specific jurisdiction and

---

**3.** *See G.F. Track Service, Inc. v. Dakota, Minnesota & Eastern Railroad Corp. (In re G.F. Track Service, Inc.)*, Neb. Bankr. 89:62, 63 (Bankr. D.Neb.1989); *In re Prospect Hill Resources, Inc.*, 69 B.R. 79 (Bankr.N.D.Ga.1986); *In re Rusco Industries, Inc.*, 104 B.R. 548 (Bankr.S.D.Ga. 1989); *B.W. Development Co., Inc.*, 49 B.R. 129

(Bankr.W.D.Ky.1985); *In re Coby Glass Products Co.*, 22 B.R. 961 (Bankr.D.R.I.1982); *In re Whippany Paper Board Co.*, 15 B.R. 312 (Bankr.D.N.J. 1981); *In re Nixon Machinery Co.*, 15 B.R. 131 (Bankr.E.D.Tenn.1981); *See also* 10 *Collier on Bankruptcy* ¶ 7004.06 (15th Ed.1997).

general jurisdiction. Specific jurisdiction is jurisdiction over causes of action arising from or related to defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). Where none of the actions complained of occurred within or had any connection to the forum state, specific jurisdiction may not be exercised. *Id.* General jurisdiction is the power of a forum state to adjudicate any cause of action regardless of where the cause of action arose. *Id.; See also Digi–Tel Holdings, Inc. v. Proteq Telecommunications, Ltd.,* 89 F.3d 519, 522 n. 4 (8th Cir.1996); *Wessels,* 65 F.3d at 1432 n. 4. To establish general jurisdiction, the non-resident defendant must be engaged in continuous and systematic general business contacts with the forum state. *Id. Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 416, 104 S.Ct. at 1873.

■ The Eighth Circuit has established a five-factor test to determine if the above due process requirements have been met. *Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.,* 111 F.3d 1386, 1390 (8th Cir. 1997); *Digi–Tel,* 89 F.3d at 522. The factors are:(1) the nature and quality of the contacts, (2) the quantity of the contacts, (3) the relation of the cause of action to the contacts, (4) the forum state's interest in the litigation, and (5) the convenience of the parties. *Id.* The first three factors are to be given primary consideration while the last two are to be given secondary consideration. *Id.* The third factor distinguishes whether the jurisdiction is specific or general. *Digi–Tel,* 89 F.3d at 522 n. 4 (citing *Wessels,* 65 F.3d at 1432 n. 4.)

■ Applying the five factors to Creel & Atwood, it is clear that Creel & Atwood had more than sufficient contacts for specific jurisdiction. Creel & Atwood voluntarily represented the debtor corporation, Lockwood, for approximately the first ten months of the underlying Chapter 11 case. While Creel & Atwood was a Texas law firm, it chose to represent a Nebraska corporation in the United States Bankruptcy Court for the District of Nebraska. During that time, representatives of Creel & Atwood, were at vari-

ous times physically present in Nebraska representing Lockwood. While the representation lasted less than a year, Creel & Atwood managed to perform significant amount of billable work in the Chapter 11 case and billed the estate for approximately $160,000.00. The adversary proceeding is based upon the representation of the debtor by Creel & Atwood and the fees that Creel & Atwood received. It is these very fees that the Chapter 7 Trustee seeks to disgorge in this adversary proceeding. The District of Nebraska has a continued interest in the adjudication of the adversary proceeding, since the outcome of the adversary proceeding will significantly impact the underlying bankruptcy case. Nebraska is the most convenient forum for all parties, except for Creel & Atwood. The underlying bankruptcy case is pending in the District of Nebraska, the Chapter 7 Trustee and counsel for the Chapter 7 Trustee are in Nebraska, the debtor corporation is located in Nebraska, and this Court is familiar with the parties and the history of the case. All five of the factors strongly indicate specific jurisdiction over Creel & Atwood, for this disgorgement proceeding, exists in Nebraska.

## IV. Failure to State a Claim

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the "court 'is constrained by a stringent standard.... A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 545–46 (8th Cir.1997), *citing Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir. 1982) (quotations and citations omitted). Additionally, the complaint must be viewed in the light most favorable to the plaintiff and the complaint "should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations." *Id.*

Under the *Parnes* analysis, the focus is whether the Chapter 7 Trustee has a cause of action to compel disgorgement from a Chapter 11 professional, who received com-

pensation during the Chapter 11 portion of the case, and whether the Chapter 7 Trustee has pled sufficient facts which, if proven true, would entitle him to the relief sought.

The clear majority of courts that have addressed this issue have uniformly held a cause of action for disgorgement does exist if the Chapter 7 estate is administratively insolvent. *See Matz v. Hoseman,* 197 B.R. 635, 639 (N.D.Ill.1996)(An award of interim fees by the bankruptcy court under § 331 is not final and is subject to later review by the court.); *U.S. Trustee v. Johnston,* 189 B.R. 676, 677 (N.D.Miss.1995)(A court has the power to order the disgorgement of professional fees paid pursuant to orders granting interim compensation under § 331, in order to carry out the provisions of § 726(b).); *In re Anolik,* 207 B.R. 34 (Bankr.D.Mass.1997)(Interim compensation awards for professionals persons are interlocutory and subject to disgorgement, but ordering disgorgement of interim fees, otherwise allowable, in either Chapter 7 or 11 case is discretionary matter in administratively insolvent cases.); *In re Metropolitan Elec. Supply Corp.,* 185 B.R. 505 (Bankr.E.D.Va.1995)(Applications denominated "final applications" for compensation, were still interim fees pursuant to § 331 and therefore subject to disgorgement.); *In re Lochmiller Indus., Inc.,* 178 B.R. 241 (Bankr.S.D.Cal.1995)(Chapter 11 professionals required to disgorge amounts paid to them as Chapter 11 administrative expense claims prior to conversion of case to Chapter 7, upon determination that Chapter 7 estate was administratively insolvent.); *In re Kearing,* 170 B.R. 1 (Bankr.D.D.C.1994)(Bankruptcy Court has authority to order disgorgement of interim compensation previously paid, upon showing of administrative insolvency.); *In re Lighting Ctr.,* 178 B.R. 320 (Bankr.D.R.I.1995)(Professional ordered to disgorge the amount it has received of interim compensation in excess of its pro-rata distribution, in a Chapter 7 case, which was converted from Chapter 11.); *In re Croton River Club,* 162 B.R. 656 (Bankr.S.D.N.Y. 1993)(Law Firm's administrative claim was potentially subject to subrogation by super priority provision of Code, therefore firm's final fee application would be allowed and paid by Chapter 7 trustee, subject to possible future disgorgement, if the estate became insufficient to provide full satisfaction of Chapter 7 super priority claimants, and law firm's fee exceeded its pro rata share of Chapter 11 administrative claims.); *In re Gherman,* 114 B.R. 305 (Bankr.S.D.Fla.1990)(Interim compensation would be allowed, subject to duty to later disgorge such amounts if it was determined that insufficient funds existed to similarly pay other administrative claims.); *In re Vernon Sand & Gravel,* 109 B.R. 255 (Bankr. N.D.Ohio 1989)(Bankruptcy court can require professional fees to be disgorged to achieve prorated deduction when, upon conversion of Chapter 11 case to Chapter 7, there are insufficient funds to pay Chapter 11 administrative expenses.); *In re Kaiser Steel Corp.,* 74 B.R. 885 (Bankr.D.Colo. 1987)(If some administrative expenses are paid on interim basis and it is ultimately determined that there will be insufficient funds to similarly pay all other administrative claims, those who have received interim payments may be required to disgorge funds so that all administrative claims share pro rata.); *In re Wabash Valley Power Assoc.,* 69 B.R. 471 (Bankr.S.D.Ind.1987)(Interim fee awards are refundable to estate, where it subsequently becomes necessary to prorate administrative expenses.); *In re American Internat'l Airways, Inc.,* 47 B.R. 716 (Bankr.E.D.Pa.1985)(Interim allowances are subject to the Court's re-examination and adjustment during the course of the case, and all expenses of administration must receive the Court's final scrutiny and approval and are refundable to the estate if it subsequently becomes necessary to pro rate administrative expenses.); *In re Burlington Tennis Associates,* 34 B.R. 839 (Bankr.D.Vt.1983)(While § 331 permits interim compensation, only at conclusion of case can a determination of full value of services rendered be made, thus interim compensation is approved subject to later readjustment or disgorgement); *In re Vermont Real Estate Inv. Trust,* 26 B.R. 905, 908 (Bankr.D.Vt.1983)(Interim compensation allowed subject to the proviso that applicant will reimburse the Estate in the event that

pro-ration of administrative expenses becomes necessary by conversion to Chapter 7 or because of insufficient funds with which to pay all Chapter 11 administrative costs.).

Creel & Atwood cited no legal authority in support of its position that the trustee's complaint failed to state a claim. The Court has found only one case that held that a cause of action for disgorgement, based solely on administrative insolvency, does not exist under the Code. *In re Unitcast, Inc.*, 214 B.R. 992 (Bankr.N.D.Ohio 1997). In *Unitcast*, the court stated that:

> The issue to be resolved upon the UST's Request is whether this Court should adopt the rule already adopted by other courts that interim professional fees paid during a Chapter 11 case which is subsequently converted to a Chapter 7 case should be disgorged to effectuate a pro rata distribution among administrative expense creditors when there are insufficient assets in the Chapter 7 case to pay all the Chapter 11 administrative expenses have been paid. This Court does not believe that Congress intended disgorgement of professional's fees due only to administrative insolvency. Further, this Court finds such disgorgement would harm rather than further the goals of the Bankruptcy Code.

Id. at 1000.

 Section 331 allows only "[a] trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title to apply" for interim compensation. The court, at its discretion "may allow and distribute" the compensation sought by the applicant. A bankruptcy court's authorization to distribute interim compensation to a professional, based on his administrative claim, does not create in that professional a greater priority right based merely on the fact that the professional has been allowed to receive the compensation. However, under the *Unitcast* analysis this is precisely the outcome. Professionals, who are given the same priority as other administrative expenses but allowed to seek interim compensation, are given a defacto "super priority" over other administrative claimants

who are not allowed to seek interim payment of their claims.

This Court declines to follow *Unitcast* and instead concurs with the majority of courts that have addressed this issue and finds that a cause of action for disgorgement based on administrative insolvency exists under the Bankruptcy Code.

 Additionally, Creel & Atwood argues that even if a cause of action for disgorgement exists for interim fees paid to Chapter 11 professionals, only those paid by an interim order are subject to disgorgement and that the "final" award to Creel & Atwood was via a "final" order, thus not subject to disgorgement. Creel & Atwood argue that the cases of *Dahlquist v. First National Bank in Sioux City (In re Dahlquist)*, 751 F.2d 295 (8th Cir.1985) and *Yermakov v. Fitzsimmons (In re Yermakov)*, 718 F.2d 1465 (9th Cir. 1983) support its position that the fees were awarded by a "final" order. *Dahlquist* and *Yermakov* are both factually and legally distinguishable from the case at bar.

In *Yermakov*, the debtor's attorneys were appealing the bankruptcy court's disallowance of their contingency fee contract, which predated the bankruptcy. The attorneys had not received any of the compensation that was the subject of the appeal. The debtor had filed a motion to dismiss the Chapter 11 case prior to the attorneys seeking approval of their fee allowance pursuant to 11 U.S.C. § 330(a)(1). The bankruptcy court did not ruled on the motion to dismiss, rather the bankruptcy court was awaiting the outcome of the appeal. *Yermakov*, 718 F.2d at 1468. Additionally, the Ninth Circuit made the determination that the order was final solely for the purpose of determining appellate jurisdiction. Likewise, in *Dahlquist*, the Eighth Circuit, following *Yermakov*, held that an interim award of attorneys fees was a final order and thus appealable, when the underlying bankruptcy case had been dismissed. *Dahlquist*, 751 F.2d at 297.

In the present case, Creel & Atwood sought compensation after withdrawal from the case, but the Chapter 11 case continued for approximately two and a half years before being converted to Chapter 7. The Chapter 7 case is currently ongoing and no

motion to dismiss is currently pending. Creel & Atwood's claim is not being disputed from a section 330 stand point, rather the Chapter 7 Trustee seeks to provide for full payment of the higher priority Chapter 7 administrative claims and a pro rata distribution of the Chapter 11 administrative claims.

Creel & Atwood's argument overlooks the fact that if the funds it received were not allowed pursuant to section 331, Creel & Atwood would have had no statutory authority to receive payment on its claim prior to confirmation. Section 330 states, in pertinent part, "[a]fter notice to the parties in interest and the United States Trustee and a hearing, ... the court **may award** to a trustee, an examiner, a professional person ...reasonable compensation" 11 U.S.C. 330(a)(1)(A) (emphasis supplied). In a Chapter 11 case, the payment of section 507(a)(1) administrative claims, which includes professional fees, would occur no sooner than the effective date of the plan. 11 U.S.C. § 1129(a)(9)(A) or if converted to Chapter 7 at distribution pursuant to section 726. However, section 331 states in pertinent part "[a]fter notice and a hearing, the court **may allow and distribute** to such applicant such compensation or reimbursement." 11 U.S.C. § 331 (emphasis supplied). No plan was confirmed in the Chapter 11 case (thus no effective date for the plan) nor has the Chapter 7 Trustee initiated distribution pursuant to section 726. Thus the only Code provision that would have allowed Creel & Atwood to apply for and **receive** compensation and reimbursement is section 331. Therefore, Creel & Atwood's compensation was an award of interim compensation pursuant to section 331 and thus is subject to disgorgement.[4]

The Chapter 7 Trustee's complaint sufficiently alleges facts and a basis for recovery, to overrule the Motion to Dismiss on the basis of failure to state a claim.

### V. Res Judicata

▮▮ The term res judicata, when used generally, encompasses two distinct concepts, claim preclusion and issue preclusion. *W.A. Lang Co. v. Anderberg–Lund Printing Co. (In re Anderberg–Lund Printing Co.),* 109 F.3d 1343, 1346 (8th Cir.1997). The *Anderberg–Lund* court examined the distinction of the two concepts, and noted:

> Claim preclusion (traditionally termed res judicata or merger and bar) " 'bars relitigation of the same claim between parties or their privies where a final judgement has been rendered upon the merits by a court of competent jurisdiction.' " *Plough v. West Des Moines Community Sch. Dist.,* 70 F.3d 512, 517 (8th Cir.1995)(quoting *Smith v. Updegraff,* 744 F.2d 1354, 1362 (8th Cir.1984)). Issue preclusion (or collateral estoppel) applies to legal or factual issues "actually and necessarily determined," with such determination becoming "conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979).

Id. at 1346.

▮▮ Creel & Atwood's argument that res judicata is applicable to the fee order is wholly without merit. Claim preclusion "bars relitigation of the same claim between parties" and implicit in that statement is the fact that the claim must have been litigated in the first place. At the time of Creel & Atwood's final fee allowance, the bankruptcy case was still in Chapter 11 and 11 U.S.C. § 726(b) was not yet applicable. Additionally, the bankruptcy estate arguably was not yet administratively insolvent. Finally, it should be clear that this action for disgorgement could have risen only after Creel & Atwood received the payment and thus had something to be disgorged. Issue preclusion is likewise inapplicable to this case. Issue preclusion requires the issue to be barred have been "actually and necessarily determined." Neither the issue of whether the estate was/is administratively insolvent nor any other relevant issue to the disgorgement

---

4. Even if one assumes, for the sake of argument, that Creel & Atwood compensation order was a final compensation order under § 330, as the court in *Lochmiller* noted "even 'final' orders for compensation under section 330 are interlocutory and subject to review and modification while the case is pending." *Lochmiller,* 178 B.R. at 245 n. 18.

cause of action have been previously determined.

## VI. Miscellaneous Arguments

Creel & Atwood also raised several other arguments for granting the Motion to Dismiss, such as "equitable mootness", estoppel, and reasonable expectations of Creel & Atwood. These issues involve material questions of fact and therefore not appropriate for determination on a motion to dismiss.

### Conclusion

For the stated reasons above, Creel & Atwood's Motion to Dismiss is denied.

Separate journal entry to be filed.